73 So.2d 239

**UNITED STATES STEEL CORP.**

**v.**

**MATHEWS.**

**6 Div. 616.**

Supreme Court of Alabama.

May 13, 1954.

Rehearing Denied June 17, 1954.

Bryan Chancey and McDonald & Moon, Birmingham, for appellee.

Burr, McKamy, Moore & Tate and Wm. Henry Beatty, Birmingham, for appellant.

explosion of molten metal or slag, particles of which set fire to plaintiff's clothing. At the conclusion of the testimony, the defendant requested the affirmative charge and made a motion in writing to transfer the cause to the Workmen's Compensation docket of the Circuit Court on the ground that at the time plaintiff sustained the injuries he was an employee of defendant. The trial court refused to give the requested charge and overruled the motion. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has appealed, assigning as error the aforementioned action of the trial court.

The single issue to be determined by this court is whether or not the plaintiff was an employee of the defendant at the time of the accident. In so doing, we must review the tendencies of the evidence most favorable to plaintiff, allowing such reasonable inferences as the jury was free to draw. Duke v. Gaines, 224 Ala. 519, 140 So. 600.

The plaintiff's evidence tended to show that on February 1, 1951, the plaintiff began working at the Soil Conditioner Plant of Tennessee Coal, Iron & Railroad Company, hereinafter called T. C. I. (now U. S. Steel Corporation). The plaintiff, working as foreman of a crew of six men, was employed by Virginia Bridge Company, a distinct and separate legal entity from T. C. I. The work being done by the employees of the Virginia Bridge Company at the Soil Conditioner Plant was done under the general authority of an agreement between Virginia Bridge Company, an independent contractor, and T. C. I. whereby the Virginia Company was to "furnish labor, tools, and equipment to replace, repair and paint steel work at Soil Plant."

Plaintiff testified that his immediate supervisor was one Peifer of the Virginia Company, who instructed the plaintiff to take over the job as foreman and to work with the supervision and operation. The plaintiff was further instructed to report to and work with Vance and Parker (employees of T. C. I.), i. e., they were to work together, to each other's advantage. While

SIMPSON, Justice.

Plaintiff, appellee here, brought suit against defendant claiming damages for personal injuries. The suit was based upon the alleged negligence of defendant's employees in the operation of an overhead crane in such a manner as to cause an

working at the defendant's plant, plaintiff and his crew did not report for work to the Virginia Company at the beginning of each day's work, nor did they report to the Virginia Company at the end of each day's work. But the plaintiff turned in time reports each day to Virginia Company by means of the timekeeper for Virginia Company coming out to the Soil Conditioner Plant daily and picking up said time sheets turned in by the plaintiff for himself and the other employees of Virginia Company under his charge. The plaintiff and the other members of his crew were paid by Virginia Company—the checks being brought by said company to them. Plaintiff testified that this procedure, i. e., method of timekeeping and payment, was done on all jobs. One Reid, employee of Virginia Bridge Company and a member of the six-man crew over which plaintiff was foreman, testified that "after the explosion (in which plaintiff was injured) happened I called the home office, called our superintendent at the Virginia Bridge office in N. Birmingham, and told him what had happened * * *." The superintendent at Virginia Bridge told him which hospital to take the plaintiff to and arranged to meet them there.

Mr. Vance, construction engineer for T. C. I., gave plaintiff instructions about the work and stopped to observe the work approximately every other day. The actual work was done by the Virginia Company's crewmen under plaintiff's supervision, the plaintiff following drawings and plans that Vance turned over to him, which were prepared by T. C. I. The only testimony offered by either plaintiff or defendant with regard to who had the authority to discharge was the following statement by plaintiff: "As far as Mr. Vance (employee of T. C. I. ) coming out and laying a man off, I don't think he could do it."

Mr. Vance testified that from time to time he had conversation with the plaintiff with regard to what was to be done, that he told the plaintiff the work that was to be done and looked to him for the result. He also testified that he inspected the result of the work and looked after it while it was in progress although he did not "pin

him (plaintiff) down to the methods he would use" because he knew the plaintiff was experienced. The tools and equipment used by the plaintiff were not the property of T. C. I. There was nothing in the agreement between T. C. I. and the Virginia Bridge Company with reference to the right of control.

It is contended by the appellant that the evidence shows conclusively, without the least adverse inference, that the appellee was under the "loaned servant" doctrine, an employee of T. C. I. at the time of the accident and such issue should not have been submitted to the jury. It has been said that "whether one who is usually and normally the servant of one master has become specially and temporarily the servant of another * * * is ordinarily a question of fact. If under the circumstances only one inference can properly be drawn, the court will determine it, but if reasonable men may fairly come to different conclusions respecting the inference to be drawn from the fact, the case will be one for the jury." 2 Mechem on Agency 1447, § 1864.

 It is a well-recognized fact that one may be in the service of a general master and nevertheless with respect to particular work may be transferred to the service of another in such a way that he becomes for the time being the servant of the special master. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, and authorities there cited. In such a case, the result will be determined by the answer to the questions: whose work was the servant doing and under whose control was he doing it? Williams v. Central of Georgia Ry. Co., 220 Ala. 298, 124 So. 878. And it is the reserved right of control rather than its actual exercise that furnished the true test of relationship. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608; Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757. He is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate result and in all its details. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74.

The question naturally arises as to what is meant by "control". It is said that there must be careful distinguishing "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a large undertaking." Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480. And the fact that the borrower gives information and directions to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person. O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085; 57 C.J.S., Master and Servant, § 566.

In Martin v. Anniston Foundry Co., supra, it was stated that where the evidence does not clearly establish who the employer is, consideration must be given to the character of the service to be rendered, the duration of employment, and the one who is paying the employee. In the case at bar, plaintiff was foreman of a crew charged with repair work on a soil conditioner plant—purpose and function of the plant being to take basic slag from the open hearth, crush it into powder, sack it and use it on land and farms as a soil conditioner. With reference to the duration of employment, there was no stipulation in the agreement between the plaintiff's general employer and T. C. I. with respect to the duration of the employment; the plaintiff, at the time of the accident, had been working at the Soil Plant for approximately two months, whereas one member of the six-man crew had been working there two or three months at the time of the accident and another had been working there seven or eight months at the time of the accident. With regard to who was paying the plaintiff, the evidence is undisputed that the plaintiff's general employer, Virginia Company, paid him. We are also of the opinion that the stipulation on the back of the agreement between T. C. I. and Virginia Bridge Company is of some import on the issue of whether the plaintiff was an employee of T. C. I. It reads: "It is further agreed that you (Virginia Bridge) accept exclusive liability, in respect to all agents * * * employees * * * employed in or about the performance of or in connection with this order, or in connection with the services covered thereby." For analogy see Moore-Handley Hardware Co. v. Williams, supra, where evidence that employer carried liability policy covering employee was held material on issue of master-servant relationship.

In the leading case of Standard Oil Co. v. Anderson, supra (often cited by this court), it was said that in order to relieve the general master from the legal relation of master and servant, it must appear that that relation for the time had been suspended, and a new relation between the servant and the special master had been created. In the absence of evidence to the contrary, there is an inference that the servant remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. Restatement, Agency, § 227, comment (c). See, also, 1 Larsen, Workmen's Compensation Law, 712.

In the case of Williams v. Central of Georgia Ry. Co., 220 Ala. 298, 124 So. 878, cited by appellant, the single question was whose employee was the engineer operating the engines at the time of the collision. The court held that he was the servant of the special master; it was pointed out, however, that "it appeared * * * without dispute" that the engineer was "at all times under the direction of the contractor."

And in Dallas Mfg. Co. v. Townes, 148 Ala. 146, 41 So. 988, also cited by the appellant, the plaintiff, employee, was placed by the defendant, general master, "under the orders" of the foreman of the special master. It was therein said that the "evidence shows that the plaintiff * * * was working under an independent contractor, subject to his orders or to the orders of his superintendent only, who was not in any way subject to the orders or direction of the defendant."

In the case of Woodward Iron Co. v. Brown, 167 Ala. 316, 52 So. 829, 831, also

relied on by appellant, the question arose as to whose employee was one Chamblee. The court held that he was not the servant of the defendant but was an employee of an independent contractor. We find the following expression therein, "While there is evidence to show that * * * Chamblee was paid by the defendant, yet the evidence is without conflict that he was under the entire management, orders, and control of the independent contractors, which * * * made him the servant of the independent contractors, and not of the defendant."

The appellant argues that the following cases add sustentive force to the construction that appellee at the time the accident occurred was an employee of T. C. I. and that the trial court therefore erred in submitting such issue to the jury. C. E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83; DeBardeleben Coal Corp. v. Richards, 251 Ala. 324, 37 So.2d 121; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276, 278.

In the Martin case, supra, a written contract between Martin and Republic Steel was offered in evidence. One of the provisions of said contract reads: " 'This agreement may be terminated at any time the first party's engineer or superintendent finds the contemplated work has been completed or when it appears to said engineer or superintendent that said second party or any of his employees or associates has been guilty of violating any of the rules of first party or guilty of carelessness or incapacity.' " The court therein commented:

"The contract in this case cannot but impress the judicial mind that the reserved right of the defendant to terminate the contract, and thereby, the right to discharge the employee, when, and in the event, 'it appears to said engineer or superintendent that said second party or any of his employees or associates has been guilty of violating any of the rules of first party or guilty of carelessness or incapacity,' is of considerable weight as tending to show that the employee is not an independent contractor. * *

This reserved right to terminate the contract in the events enumerated, to our mind, negatives the idea that the petitioner was an independent contractor."

In the cases of C. E. Adams & Co. v. Harrell, supra, and DeBardeleben Coal Corp. v. Richards, supra, this court was, on certiorari, reviewing the trial court's findings guided by the rule that such findings will not be disturbed where there is any legal evidence which will support such findings, whereas here we are to determine whether the defendant was due the affirmative charge for the lack of any inference contrary to the loaned servant claim. We are not now reviewing the case on the weight of the evidence, but to determine whether there was a scintilla supporting the action. If so, the affirmative charge was properly refused. To be sure, the question is a close one and the appellant's position is ably presented by counsel, but we are persuaded the reasonable inferences arising from the whole evidence did furnish a scintilla to support the verdict and that the trial court ruled correctly to that effect.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and STAKELY, JJ., concur.