105 So.2d 672

The **JEFFREY MANUFACTURING COMPANY**

v.

**Ed Cleveland HANNAH.**

**6 Div. 220.**

Supreme Court of Alabama.

Oct. 9, 1958.

Huie, Fernambucq & Stewart, Birmingham, for appellant.

E. D. McDuffie and Norma Holcombe, Tuscaloosa, for appellee.

LAWSON, Justice.

This is a suit to recover damages for personal injuries brought in the Circuit Court of Tuscaloosa County by Ed Cleveland Hannah against The Jeffrey Manufacturing Company, a corporation, T. J. Hill, John Doe and Richard Roe. The plaintiff, in open court, struck John Doe and Richard Roe as parties defendant. There was a jury verdict in favor of the plaintiff and against The Jeffrey Manufacturing Company. Judgment was in accord with the verdict. The defendant T. J. Hill, who was exonerated by the jury's verdict, was not an agent, servant or employee of The Jeffrey Manufacturing Company, which will be referred to hereafter as Jeffrey. Its motion for new trial having been overruled, Jeffrey has appealed to this court.

■ The case was tried on Count 2 of the amended complaint, which was challenged by demurrer taking the point that it failed to show any duty owed the plaintiff by the defendant. Count 2 alleges that the plaintiff at the time he was injured was at a place where he had a right to be on the premises of his employer, The Central Foundry Company, a corporation, hereafter referred to as Central, where the agents, servants or employees of Jeffrey were engaged in carrying out Jeffrey's contract with Central to install certain heavy machinery; and that plaintiff sustained his injury while he was rightfully at work in assisting the agents, servants or employees of Jeffrey in the operation and installation of the heavy machinery. Such averments, in our opinion, sufficiently show a duty on the part of Jeffrey to exercise due care not to injure the plaintiff. See Tennessee Coal, Iron and R. Co. v. Davis, 194 Ala. 149, 69 So. 544; Alabama Utilities Co. v. Champion, 230 Ala. 263, 160 So. 346.

■ The main insistence of Jeffrey is that it was entitled to the general affirmative charge with hypothesis. This is principally based upon the claim that at the time Hannah was injured he was an employee of Jeffrey and because of such employment the injury comes within the purview of the workmen's compensation law, Code 1940, Tit. 26, § 253 et seq. In considering this contention, we must review the tendencies of the evidence most favorable to the plaintiff, allowing such reasonable inferences as the jury was free to draw. United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239; Atlantic Coast Line R. Co. v. Dunivant, 265 Ala. 420, 91 So.2d 670; Vulcan Life & Accident Ins. Co. v. Standifer, 266 Ala. 246, 97 So.2d 568.

In the summer of 1955 when Jeffrey contracted with Central to install machinery in the latter's plant at Holt, Alabama, the plaintiff, Hannah, had been in the employ of Central for more than ten years. He was rated or classified as a foundry mechanic and worked in the department charged with the responsibility of maintaining and operating machinery. Certain features or parts of the machinery to be installed were different from anything in Central's plant, so prior to the beginning

of the installation or shortly thereafter it was agreed between the management of Central and Jeffrey's superintendent that Hannah would be assigned to assist Jeffrey in the installation of the machinery so that he would become familiar with it and would thereby be better qualified to keep it in operation after it was turned over to Central.

In the early part of December, 1955, departmental orders were executed to the end that on or about December 13, 1955, Hannah was transferred from Central's Foundry No. 3 to its Foundry No. 4 wherein the machinery was being installed by Jeffrey. From that date until March 23, 1956, when Hannah was injured, the greater part of the labor performed by Hannah was in connection with the installation of the machinery and was done under the direction of Jeffrey's superintendent, Atkins. However, on several occasions during that period Hannah performed services on other machinery in accordance with instructions given him by some of Central's supervisory personnel.

The installation of the machinery was completed a few days prior to the day on which Hannah was injured. The first time an attempt was made to use the machinery in the making of pipe a breakdown occurred. The machinery had not been turned over to. Central and was still under the control of Jeffrey and was being tested. When the breakdown occurred Hannah, under instructions from Jeffrey's superintendent, Atkins, made an attempt to determine the cause of the breakdown and to make repairs. It was while he was so engaged that he suffered a serious injury.

During all of the time that Hannah was assisting in the installation of the machinery he remained on Central's payroll and was paid by Central's checks. However, a chargeback was effectuated whereby Jeffrey was charged with the costs of Hannah's labor. Hannah received the same rate of pay as he had received while in Foundry No. 3 and continued to be referred to as the holder of Central's Badge No. 251.

Hannah punched Central's time clock each day and Central deducted social security payments from his wages and continued to carry insurance on him. When the accident occurred Hannah was sent to the hospital by Central's safety director and Central paid his hospital expenses, including cost of nurses, and he received medical attention from a group of doctors who were in the employ of Central. During the time that he was unable to work he received workmen's compensation payments from Central or its carrier. Jeffrey paid no part of the expense resulting from the accident nor did it pay any compensation benefits.

Hannah was looked upon by Central's management as continuing to be its employee and when directed to assist Jeffrey in the installation of the machinery, Hannah was assured that upon the completion of that assignment he would be returned to his usual duties. However, after the accident the nature of his injuries was such that he was unable to perform the duties of a foundry mechanic or millwright and Central assigned him duties of a less arduous nature. He was an employee of Central at the time the suit was instituted.

■ Jeffrey takes the position that because it was reimbursing Central for the cost of Hannah's labor and because Hannah was assigned to Jeffrey to assist in the installation of the machinery and to take instructions from its superintendent, Atkins, and was complying with those instructions at the time of the accident, Hannah was at that time Jeffrey's employee as a matter of law. We do not agree.

■■ We shall not attempt to discuss the decisions of this and other courts in this field. It seems to be quite generally agreed that in order to transfer the employer-employee relationship from the general employer to the one to whom the employee is loaned there must be some consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship. Where an employee

enters the service of another at the command and pursuant to the direction of the master, no new relationship is necessarily created, particularly where, as here, the employee was assured of his continuing status as an employee of the general employer and was given the new assignment for the purpose of becoming better equipped to perform services for the general employer. Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239 N.W. 412; Ryan v. Twin City Wholesale Grocer Co., 210 Minn. 21, 297 N.W. 705.

In our recent case of United States Steel Corp. v. Mathews, supra, we said in part as follows:

"It is a well-recognized fact that one may be in the service of a general master and nevertheless with respect to particular work may be transferred to the service of another in such a way that he becomes for the time being the servant of the special master. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, and authorities there cited. In such a case, the result will be determined by the answer to the questions: whose work was the servant doing and under whose control was he doing it? Williams v. Central of Georgia Ry. Co., 220 Ala. 298, 124 So. 878. And it is the reserved right of control rather than its actual exercise that furnished the true test of relationship. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608; Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757. He is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate result and in all its details. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74.

"The question naturally arises as to what is meant by 'control'. It is said that there must be careful distinguishing 'between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a large undertaking.' Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480. And the fact that the borrower gives information and directions to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person. O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085; 57 C.J.S. Master and Servant § 566."—261 Ala. 123–124, 73 So.2d 242.

■ It has been said that "whether one who is usually and normally the servant of one master has become specially and temporarily the servant of another * * * is ordinarily a question of fact. If under the circumstances only one inference can properly be drawn, the court will determine it, but if reasonable men may fairly come to different conclusions respecting the inference to be drawn from the fact, the case will be one for the jury." 2 Mechem on Agency 1447, § 1864.

■ We are clear to the conclusion that under our holding in United States Steel Corp. v. Mathews, supra, wherein our previous cases in this field were reviewed, the question as to whether or not Hannah at the time of his injury was an employee of Jeffrey was a question for the jury.

■ Jeffrey also contends that it was entitled to the general affirmative charge on the ground that there was no evidence tending to show negligence on its part. We see no occasion to discuss this contention at length. The evidence establishes beyond peradventure that Hannah's injury resulted from a defective valve which had been furnished by Jeffrey and there is evidence tending to show that if the proper safety devices had been placed on the machinery by Jeffrey the injury could not have occurred even though the valve was defective. Under the circumstances Jeffrey clearly owed Hannah the duty to exercise reasonable care not to injure him and the evidence is ample to support a

finding by the jury that Jeffrey breached that duty.

There is no question before us as to the weight of the evidence, inasmuch as the action of the trial court in overruling Jeffrey's motion for a new trial is not assigned as error.

We have considered the assignments of error which have been treated in brief of appellant. We find no error to reverse presented by any of those assignments. It follows that the judgment of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY, MERRILL and COLEMAN, JJ., concur.