122 So.2d 386

**SOUTHERN CEMENT COMPANY**

v.

**John W. PATTERSON.**

6 Div. 507.

Supreme Court of Alabama.

May 26, 1960.

Rehearing Denied Aug. 18, 1960.

130

John P. Ansley and Spain, Gillon & Young, Birmingham, for appellants.

Hogan, Callaway & Vance, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal by Southern Cement Company, a Corporation; American-Marietta Company, a Corporation; and Southern Cement Company, Division of American-Marietta Company, a Corporation, from a judgment against them for $76,350. Motion for a new trial was overruled after appellee filed a remittitur of $25,000.

The three appellants are actually one company but the company is known by at least three different names. Each filed a general appearance and each pleaded the general issue in short by consent, and all three took an appeal.

Practically all the appellants' witnesses referred to the company as "Southern Cement Company," and appellants' counsel used that name in his direct examination of the witnesses and in his cross-examination of the president of the company.

The answers to interrogatories stated the name as "Southern Cement Co., Division of American-Marietta Company." One of appellants' counsel stated the name to the court as "Southern Cement Company, American-Marietta Division." Another stated "The operation here is the Southern Cement Company, a Division of American-Marietta." The court then asked, "Is that a legal entity?" The answer was: "That is a corporation, yes, sir." The president of the company testified that the full and correct name of the company was "Southern Cement Company, Division of American-Marietta which is an Illinois Corporation."

There is no question but that all the different names applied to the operation where appellee received his injuries. We have held that one who is as well known by one name as another can sue or be sued by either name. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294. In Woodmen of the World v. Maynor, 206 Ala. 176, 89 So. 750, 753, the plaintiff sued "Woodmen of the World, a corporation." The correct name was "Sovereign Camp of the Woodmen of the World." The defendant filed the plea of the general issue and nine special pleas, but did not file plea of misnomer or plea of nul tiel corporation. The plea of general issue, signed by attorneys for defendant, as here, caused the court to presume that the name as stated was proper. The court said "The question of its name should have been raised by the defendant by proper plea." We consider our reference to "appellants" in this opinion as referring to the true defendant, regardless of what its correct name might be. The trial court properly refused the requested affirmative charges for some of the named appellants, because of the uncertainty as to the correct name of the defendant among defendants and their counsel.

The complaint claimed $85,000 as damages for injuries sustained by the appellee (plaintiff) on, to-wit, July 18, 1957. It was claimed that appellee was an employee of Contractors Equipment Rental Company, and on said date, Contractors Equipment Rental Company had a contract or agreement with the appellants to do or perform certain work on the premises of the appellants at the Roberta Plant near Calera, Alabama; and that while appellee was on said premises performing his work, an employee of the appellants negligently operated a crane so as to cause his injuries and damages. Appellants' chief defense was the loaned servant doctrine.

A petition for intervention was filed by Employers Insurance Company, and when granted, a complaint was filed claiming $4,103.65 as reimbursement for amounts it would have to pay under a Workmen's Compensation policy. It was stipulated that the intervenor had paid $1,397.75 to plaintiff as of the date of trial.

The appellee, John W. Patterson, was an iron worker employed by Contractors Equipment Rental Company, which was engaged in installing certain machinery and erecting steel structures under an oral contract on the premises of the Roberta Plant near Calera, Alabama, which is a lime and cement operation. At the time of the accident, in which appellee sustained his injuries on July 18, 1957, he was working with a crew of men engaged in moving and installing a hopper in what is called the "crane building" on the premises of the Roberta Plant. The installation of this hopper was a part of the contract or agreement of Contractors Equipment Rental Company. To move this hopper into place, they elected to use the overhead crane which was already installed in the building. The crane was being operated by Chester Carlee who, during his regular course of employment, was a crane operator for Southern Cement Company, Division of American-Marietta Company, a Corporation.

The crane was an overhead type which ran on rails some forty or fifty feet above the floor of the "crane building." Ordinarily, a bucket was suspended on three cables from the crane. Two of the cables held the bucket and a third was for the purpose of opening and closing the bucket. In order to move the hopper, it was necessary to remove the bucket. The two holding cables were removed at the point where they joined the bucket. The closing line could more easily be removed at the top where it was attached to the drum on the crane.

Four men, including appellee, who were employees of Contractors Equipment Rental Company, climbed the ladder at the side of the building and onto the carriage of the crane to disengage the closing line. Carlee was standing near the carriage of

the crane watching them work. After the closing line was disconnected and lowered to the floor, three of the four men climbed down from the crane. The foreman instructed appellee to remain there until a rope attached to the cable could be pulled back up to the top of the crane. While engaged in so doing, Carlee started up the crane. Whether he had been given the signal to do so was disputed, but signal or no, it was improper for him to start the crane with a man upon it.

As the crane started and its shaft turned, appellee's pant's leg was caught and he was pulled down into the whirling shaft before the shaft was finally stopped, and the injury to his right leg was about as severe an injury as one can stand without having the leg amputated.

Appellee seeks recovery against all appellants on the basis that the crane operator, at the time and place of the accident, was an employee of all appellants acting within the line and scope of his employment.

The appellants take the position that even if Carlee was negligent, he had been borrowed by Contractors Equipment Rental Company, an independent contractor, to assist them in moving the hopper and that he was the employee of Contractors Equipment Rental Company at said time and place.

It is not denied on this appeal that Carlee was negligent in operating the crane and that appellee's leg was mangled permanently as a result of the negligence.

Appellants contend that although Carlee was a general employee of appellants, he was loaned to appellee's employer when appellee was injured. This precise issue was submitted to the jury and resolved against appellants. They now urge that they were entitled to the affirmative charge on this point.

■ In our recent case of Jeffrey Manufacturing Company v. Hannah, 268 Ala. 262, 105 So.2d 672, 674, we said:

"We shall not attempt to discuss the decisions of this and other courts in this field. It seems to be quite generally agreed that in order to transfer the employer-employee relationship from the general employer to the one to whom the employee is loaned there must be some consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is necesarily created, particularly where, as here, the employee was assured of his continuing status as an employee of the general employer and was given the new assignment for the purpose of becoming better equipped to perform services for the general employer. Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239 N.W. 412; Ryan v. Twin City Wholesale Grocer Co., 210 Minn. 21, 297 N.W. 705."

We also noted that one question to be answered is—whose work was the servant doing and under whose control was he doing it? In answering this question, several principles are stated in United States Steel Corporation v. Mathews, 261 Ala. 120, 73 So.2d 239: (1) It is the reserved right of control rather than its actual exercise that furnishes the true test of relationship; (2) he is master who has supreme choice, control and direction of the servant and whose will the servant represents in the ultimate result and in all its details; (3) the fact that the borrower gives information and directions to the servant as to the details of the work or the manner of doing it does not make this general servant of the employer the servant of the borrower.

■ Ordinarily, whether one who is usually and normally the servant of one master becomes specially and temporarily the servant of another is a question of

fact. Jeffrey Manufacturing Company v. Hannah, 268 Ala. 262, 105 So.2d 672.

Whose work was Carlee doing? The construction of the "crane building" was done partly by appellants and partly by Contractors Equipment Rental Company, which worked on an oral "cost-plus" arrangement. It could be inferred that Carlee was helping his master build the master's plant and that the master was receiving the benefit of Carlee's operation of the crane, which was his regularly assigned duty.

Who had the ultimate control over Carlee? His own supervisor directed him to help move the hopper by means of the crane. Although Carlee was obeying the hand signals of the foreman for Contractors Equipment Rental Company, there is no indication that any power or right of control had been surrendered to the foreman by Carlee's employer.

█ Appellants had the sole right to discharge Carlee, to name the operator of the crane, and Carlee was looking to appellants for his regular pay. It was certainly a jury question as to whether there was a "consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship." Jeffrey Manufacturing Company v. Hannah, 268 Ala. 262, 105 So.2d 672, 675.

The trial court did not err in refusing to give the requested affirmative charge which was based upon the theory that Carlee was a loaned servant as a matter of law.

Appellants next argue that the trial court erred in excluding certain testimony. The witness Rickard was president of appellants, but called as a witness for appellee, and he was testifying that he made an oral contract with Contractors Equipment Rental ·Company to do certain construction in connection with the "crane building," and he was asked a question on cross-examination about a conversation with Barney Kelly, who was Contractors' superintendent

in charge of the job at appellants' plant. The question was: "Did you speak to Barney Kelly about putting that (the coal hopper) in place?" Rickard made the following answer, which was excluded:

"I asked Mr. Kelly since the coal hopper wasn't installed when the building was open, when it could have been easily done by truck motor cranes we had rented and were paying for— there would be a few matters left to get in, and how he proposed to do it. And he said he would like to use our bridge crane to get in around there some 350 to 400 feet, and carry it on to the rails or cables of this crane and drift it back through the building some 300 or 400 feet within the recess in the concrete that had been created for it. And asked for my permission to do this, which I granted. And I in turn asked who was to operate the crane, since as a rule there is a discussion of who does what on a job of that nature. And the crane had been used by these people before for handling for some miscellaneous construction items or belting or pulleys, and so forth, and it had been operated by Mr. Kelly or others of his group. And he said he would operate it, or some of his people would operate it."

█ Appellee made a motion to exclude the answer and the motion was granted. Obviously, the answer was not responsive to the question. A motion to exclude is the proper procedure to remove an irresponsive answer to a question which is not objectionable from the consideration of the jury. Shelley v. Clark, 267 Ala. 621, 103 So.2d 743. Usually, the motion to exclude an irresponsive answer is made by the party asking the question, but we have sustained trial courts in excluding such answer on motion of the party not asking the question because the trial court has a discretion in the exclusion of statements of a witness not called for, but

volunteered. Ivory v. State, 237 Ala. 344, 186 So. 460, and cases there cited.

Assignments of error 29 and 30 relate to the failure of the trial court to have a blackboard removed from the view of the jury on which appellee's counsel wrote words and figures testified to by witness Stiles, an actuary, and permitting the blackboard to be used during argument to the jury.

■■■ This court has sanctioned the use of blackboards and charts for use in clarification, explanation and use of counsel in drawing inferences or making calculations based upon matters in evidence. McLaney v. Turner, 267 Ala. 588, 104 So. 2d 315; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138. The trial court properly overruled the objections when made.

■■■ Appellants argue that the blackboard and the writing thereon remained in the sight of the jury after argument and during the court's charge, and that resulted in prejudicial error. We do not decide this question because it is not presented to us. There is nothing in the record to indicate what happened with respect to the blackboard after counsel for appellee had used it in his argument, and no further ruling of the court was requested or invoked. It is elementary that the trial court will not be put in error for failure to rule on a matter which, according to the record, was not presented to or decided by it. Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846. There is no ruling of the court in reference to the matters in question which shows or contains error.

■■■ Appellants' final contention is that the motion for a new trial should have been granted on the ground that the verdict was excessive. We quote from their brief:

"The Trial Court set forth the rule that—'A new trial should not be ordered on the ground of excessiveness

of the jury's verdict, except in those cases where the Court can clearly see that the verdict or amount has been induced or reached on account of bias, passion, prejudice, corruption or other improper motive or cause'. Airheart v. Green, 267 Ala. 689, 104 So.2d 687. The Trial Court mentions percentage of disability, loss of future earning power and emotional upset of the plaintiff on the witness stand as the reasons for his conclusion the verdict was excessive.

"Appellants contend the very fact that the Trial Court considered the verdict excessive by one-third is proof that it was the result of bias, prejudice, passion, mistake or other improper motive and on this basis, the verdict should have been set aside."

Our cases do not support this theory. In Ganey v. Henley, 260 Ala. 514, 71 So.2d 281, 283, we said:

"This court is definitely committed to the proposition that a plaintiff, who has secured an excessive judgment, may remit a definite amount thereof, and thereby prevent a new trial on that ground. [Citing cases]."

Remittiturs are favored in proper cases for the promotion of justice and the ending of litigation. In Airheart v. Green, 267 Ala. 689, 104 So.2d 687, 690, the same case cited by the trial court, we listed many cases where this court has ordered a new trial on the ground that the excessive verdict "resulted from passion, prejudice, or other improper motive," conditional, however, upon the failure of the appellee to file a remittitur of a specified amount of damages.

■■■ We also held that where the trial court has ordered a remittitur and has refused to grant a new trial, a favorable presumption as to the correctness of that action is indulged in by this court. Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633.

**136**

Two doctors rated appellee's permanent disability, one at fifty percent, the other at thirty to forty percent, and that he was one hundred percent disabled as an iron worker, his only trade, except farming, and he was not able to do farm work. He had averaged $428 per month and had a life expectancy as an iron worker of 13.14 years. To replace his lost wages during this period would require over $50,000, computed on an annuity basis.

After a consideration of the en-·tire record, we are constrained to hold that a further reduction of the verdict or the granting of a new trial on the ground that the amount awarded is so excessive as to indicate bias, passion or prejudice would be unwarranted. Airheart v. Green, 267 Ala. 689, 104 So.2d 687.

Affirmed.

LAWSON, STAKELY and GOODWYN, JJ., concur.