177 So.2d 821

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

**v.**

**J. G. VAILS et al.**

**6 Div. 839.**

Supreme Court of Alabama.

Aug. 12, 1965.

Dominick, Roberts, Davidson & Donald, Tuscaloosa, and Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

Clement, Rosen, Hubbard & Waldrop, Tuscaloosa, for Vails and Meaney.

E. W. Skidmore and Mize, Spiro & Phelps, Tuscaloosa, for Sauls, Adm'x.

GOODWYN, Justice.

This is an appeal by the complainant insurance company (State Farm) from a final decree in a declaratory judgment proceeding determining coverage under an automobile liability insurance policy issued by State Farm.

Two questions are presented, viz: Whether the trial court correctly held (1) that there was coverage and (2) that State Farm should pay attorneys' fees to the solicitors of two of the respondents in the declaratory judgment proceeding.

The named insured, M. J. Meaney, operates a flower shop in Tuscaloosa, Alabama, which adjoins his home. He employed William Henry Sauls and utilized his services both in his home and in the flower shop.

Approximately 80% of Sauls' work was of a purely domestic character, while the remaining 20% was for the flower shop.

Meaney was one of ten persons who organized Tenfrenco Incorporated, a corporation engaged in selling and installing swimming pools. Tenfrenco had certain material and equipment located in a warehouse in Tuscaloosa which it wanted moved to property owned by George W. Dockery, Jr., one of the incorporators and president of Tenfrenco. In a conversation with Dockery, Meaney agreed to lend his truck, insured under the policy in question, to Tenfrenco for the purpose of moving this material and equipment, and agreed to obtain someone to help load and unload the truck. To this end, Meaney directed Sauls to help J. G. Vails, a regular employee of Tenfrenco, move the material and equipment.

On the morning of the accident here involved, Meaney accompanied Vails and Sauls to the warehouse and instructed them in their duties. Later in the day, when Vails and Sauls were hauling a load of the material and equipment, Sauls fell from the bed of the truck, sustaining the injuries from which he died. There was evidence that Sauls worked under the direction of Vails while doing the moving. There was also testimony to the effect that Sauls was to be paid by Tenfrenco for the time spent in moving the material and equipment belonging to it. However, no payment was ever made by Tenfrenco. Meaney paid approximately one month's wages to Sauls' widow after Sauls' death. Sauls was not covered by workmen's compensation.

Lola Sauls, as administratrix of Sauls' estate, brought suit against Vails and Tenfrenco seeking damages under the homicide statute. State Farm then initiated the declaratory judgment proceeding now before us seeking a declaration that it is not obligated to defend said suit. Meaney, Vails, Tenfrenco, and Lola Sauls, as administratrix, were made respondents to the bill.

(1)

State Farm's insistence that the trial court erred in holding there was coverage is based on the following exclusionary provisions of the policy, viz.:

"EXCLUSIONS — INSURING AGREEMENTS I and II

"This insurance does not apply under:

\* \* \* \* \* \*

"(e) coverage A [bodily injury liability], except as to the named insured, to any employee with respect to bodily injury of another employee of the same employer injured in the course of such employment arising out of the maintenance or use of an automobile in the business of such employer;

"(f) coverage A, to bodily injury of any employee of the insured arising out of and in the course of the insured's employment, except domestic and not then if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law; \* \* \*"

As we understand State Farm's position, its denial of coverage is based on two grounds: First, Sauls was Tenfrenco's employee at the time of the accident and coverage is excluded under clause (e) because Sauls was injured by another employee (Vails) of the same employer (Tenfrenco), Tenfrenco being an additional insured under the policy; and, second, even if Sauls was still in Meaney's employ at the time of the accident, coverage is excluded under clause (f) because the injury did not arise out of and in the course of Sauls' domestic employment.

As to the first ground, State Farm asserts that the trial court erred in finding that Sauls was employed by Meaney at the time of the accident. The applicable portions of the findings are as follows:

"4. The Court finds from the great preponderance of the evidence pre-

sented orally in Open Court, that on December 22, 1959, the date of the aforesaid motor vehicle accident, as well as prior thereto, William Henry Sauls was a domestic employee of the named insured, M. J. Meaney, Respondent. The uncontradicted evidence in this case revealed that the Respondent, M. J. Meaney, operated a flower shop, and at the same location had his home, where he and his family resided. The great preponderance of the evidence showed that the said Henry Sauls spent the majority of his working time in and around the residence. performing numerous domestic duties for the said Rsependent, M. J. Meaney, including the cutting of the yard grass, caring for turkeys kept by the Respondent, M. J. Meaney, about his home, and also caring and grooming a pony which the Respondent, M. J. Meaney, kept about his home for the use of his children, and the said Henry Sauls was paid by the Respondent, M. J. Meaney, out of the personal account of M. J. Meaney, and not out of any business account of M. J. Meaney.

"5. The Court further finds that on December 22, 1959, the date of the motor vehicle accident, the named insured, M. J. Meaney, allowed and consented for Tenfrenco, Incorporated, one of the Respondents in this cause, to borrow and use the motor vehicle insured under the aforesaid policy of insurance, namely the 1959 Chevrolet pickup truck; and said motor vehicle was delivered by the named insured, M. J. Meaney, to the Respondent J. G. Vails, who was then and there an employee of the Respondent, Tenfrenco Incorporated, and the Court finds that under the aforesaid circumstances while the Respondent, Tenfrenco Incorporated, a Corporation, had said pickup truck under the exclusive care, custody and control of its employee, J. G. Vails, the said William Henry Sauls, a domestic employee of the named insured, M. J. Meaney, suffered personal injuries resulting in his death, caused by a motor vehicle accident arising out of the use of the insured motor vehicle as aforesaid. The Court specifically finds that on December 22, 1959, and prior thereto, the said J. G. Vails by the great preponderance of the evidence was the employee of the Respondent, Tenfrenco Incorporated, a Corporation, and was acting within the line and scope of his employment for the Respondent, Tenfrenco Incorporated, a Corporation, at the time of the motor vehicle accident on December 22, 1959, resulting in personal injuries and death to William Henry Sauls, the domestic employee of the named insured, M. J. Meaney.

"6. The Court finds by the great preponderance of the evidence in this case that on December 22, 1959, when the named insured, M. J. Meaney, consented and allowed the Respondent, Tenfrenco Incorporated, a Corporation, and its servant, J. G. Vails, to use the insured vehicle owned by M. J. Meaney, that at the same time, the named insured, M. J. Meaney, allowed his domestic employee, William Henry Sauls to assist the Respondents, J. G. Vails and Tenfrenco Incorporated, a Corporation in the hauling of some material for the benefit of the Respondent, Tenfrenco Incorporated, a Corporation. The Court specifically finds that there does not appear from any evidence produced to this court that there was any consensual relationship between Henry Sauls, the domestic employee of M. J. Meaney, and the Respondents, Tenfrenco Incorporated, a Corporation, or J. G. Vails sufficient to create a new employer-employee relationship between Henry Sauls, the domestic employee of M. J. Meaney, and the Respondents, Tenfrenco Incorporated or J. G. Vails, and thus at the time and the place of the aforesaid accident, the Court finds that the said William Henry Sauls continued to be and was

as a matter of fact and in contemplation of law the domestic employee of M. J. Meaney, the named insured."

■ We think the trial court's determination was correct. Its finding that there was no consensual relationship between Sauls and Tenfrenco, sufficient to create an employer-employee relationship between them, finds support in the evidence. For a new relationship to be created there must be an agreement between the employee and the new employer. We find no such agreement between Sauls and Tenfrenco. As said in Jeffrey Manufacturing Company v. Hannah, 268 Ala. 262, 265–266, 105 So.2d 672, 674:

"* * * It seems to be quite generally agreed that in order to transfer the employer-employee relationship from the general employer to the one to whom the employee is loaned there must be some consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is necessarily created, * *."

■ In United States Steel Corp. v. Mathews, 261 Ala. 120, 124, 73 So.2d 239, 242, we had occasion to review the law in this field. Especially applicable to the case at bar is the following:

"In the leading case of Standard Oil Co. v. Anderson, supra [212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480] (often cited by this court), it was said that in order to relieve the general master from the legal relation of master and servant, it must appear that that relation for the time had been suspended, and a new relation between the servant and the special master had been created. In the absence of evidence to the contrary, there is an inference that the servant remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. Restatement, Agency, § 227, comment (c). See, also, 1 Larsen, Workmen's Compensation Law, 712."

Here, Sauls was performing the business entrusted to him by Meaney. We see nothing in the evidence sufficient to rebut the inference that he remained in Meaney's employ.

■ Appellant makes much of the fact that Sauls performed the work under the direction of Vails, Vails concededly being an employee of Tenfrenco. We do not feel that this point is decisive. As was said in Mathews, supra (261 Ala., at 123–124, 73 So.2d 239, 242):

"It is a well-recognized fact that one may be in the service of a general master and nevertheless with respect to particular work may be transferred to the service of another in such a way that he becomes for the time being the servant of the special master. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, and authorities there cited. In such a case, the result will be determined by the answer to the questions: whose work was the servant doing and under whose control was he doing it? Williams v. Central of Georgia Ry. Co., 220 Ala. 298, 124 So. 878. And it is the reserved right of control rather than its actual exercise that furnished the true test of relationship. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608; Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757. He is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate result and in all its details. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74.

"The question naturally arises as to what is meant by 'control'. It is said that there must be careful distinguish-

ing 'between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a large undertaking.' Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480. And the fact that the borrower gives information and directions to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person. O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085; 57 C.J.S., Master and Servant, § 566."

■ Here, of course, there was no large undertaking; but the distinction between the reserved right of authoritative control and the mere giving of directions is nonetheless valid. In Alabama Power Company v. Smith, 273 Ala. 509, 521, 142 So.2d 228, 239, we said that "[t]he fact that the borrower gives information and directions to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person."

■ Appellant next insists that coverage is excluded by clause (f). In this connection, and for the purpose of this argument, State Farm does not dispute the trial court's finding that Sauls was a domestic employee within the meaning of the term as used in the policy and does not deny that the injury arose out of and in the course of Meaney's employment. Rather, the contention is that there is no coverage because the injury did not arise out of and in the course of Meaney's *domestic* employment; that is, coverage is excluded unless the employee is actually engaged in domestic work at the time of the accident. Such result would require the following construction of the clause, viz.:

"This insurance does not apply to bodily injury of any employee of the insured arising out of and in the course of the insured's employment, except that it does apply to bodily injury

of any employee of the insured arising out of and in the course of the insured's domestic employment and sustained while engaged in work of a domestic nature."

Appellees, on the other hand, contend that the correct construction is as follows, viz.:

"This insurance does not apply to bodily injury of any employee of the insured, except domestic employees of the insured, arising out of and in the course of the insured's employment."

We feel that the clause is reasonably susceptible to either interpretation. In that situation, the rule is that the construction which is favorable to the insured will be adopted. See: State Farm Mutual Automobile Ins. Co. v. Hanna, 277 Ala. 32(4), 166 So.2d 872. We hold that exclusion clause (f) does not require that the injury arise out of and in the course of *domestic* employment as a condition to coverage, that Sauls was a domestic employee of Meaney, and that his injury arose out of and in the course of Meaney's employment.

We find no error in the trial court's decree declaring that State Farm is obligated, under the provisions of its policy, to defend the suit at law and to pay, to the extent of the limits of the policy, any judgment rendered therein.

(2)

■ The other question presented is whether it was error to award attorneys' fees to the solicitors for the respondents Meaney and Vails. The holding in the recent case of Clark v. Exchange Insurance Association, 276 Ala. 334, 161 So.2d 817, resolves this issue against the making of such award.

The decree will be modified so as to disallow the award of the attorneys' fees. As so modified, the decree is affirmed.

Modified and affirmed.

LAWSON, SIMPSON and COLEMAN, JJ., concur.