**Henry Allen COUNTS, Plaintiff,**

v.

**MONSANTO COMPANY, a corporation, Defendant.**

Civ. A. No. 66–97.

United States District Court
N. D. Alabama,
Northeastern Division.

Oct. 28, 1966.

H. Neil Taylor, Russellville, Ala., for plaintiff.

William B. Eyster and Eyster & Eyster, Decatur, Ala., H. H. Grooms, Jr., and Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., for defendant.

## OPINION ON MOTION OF MONSAN-
## TO COMPANY, A CORPORATION,
## FOR SUMMARY JUDGMENT

GROOMS, District Judge.

Chemstrand is a division of the Monsanto Company. While working at the Chemstrand plant at Decatur, Alabama, plaintiff was injured. He has sued Monsanto in a common law action for negligence. Monsanto asserts that under the Alabama "loaned servant doctrine" plaintiff was its employee and that his relief is limited to the Alabama Workmen's Compensation Act.

The case was submitted on the motion upon the deposition of the plaintiff and his affidavit and upon the affidavits of Lawrence Jackson, president of Jack's

Construction Company, John Cole, plant engineer of Chemstrand, and on the purchase order issued to Jack's.

On April 1, 1965, Chemstrand issued a purchase order to Jack's Construction Company, Inc. The purchase order accepted by Jack's provided that Jack's would furnish Chemstrand with its labor requirements for the calendar year 1965 at Jack's direct labor cost of $1.25 per hour with overtime pay in excess of forty hours per week, plus 18% including insurance, taxes, overhead and profit. Jack's agreed to submit to Chemstrand a weekly time sheet and a certified copy of its weekly payroll. The purchase order provided that:

> "While performing work for the Chemstrand Company, the contractor's personnel will be under the supervision of the maintenance supervisors or foreman."

In the plaintiff's deposition, taken by the defendant, plaintiff testified that he first learned about the job at Chemstrand through a Chemstrand employee's father, a Mr. Whitman. After learning of the job opening he went direct to Chemstrand, where he was hired. He did not go by the Jack's office. He didn't know Lawrence Jacks (Jackson) and never saw him at Chemstrand, except when he was just passing through. He was told to report to a Chemstrand foreman, Jim Glasgow, who "was over us" and who hired him. Glasgow told him what to do, and assigned him a job every day. He was given and took no instructions from anyone other than Chemstrand employees, from whom all orders and instructions were given as to what to do and where and how to do it. Jack's had no foreman, straw boss or supervisor at the Chemstrand plant. Glasgow told him to do the work that he was doing at the time of his injury. No one from Jack's told him. C. J. Johnson, a Chemstrand employee, was helping plaintiff at the time of his injury. He was taken to Jack's doctor after the accident in a Chemstrand ambulance. He picked up his pay checks at Chemstrand. These were Jack's checks. He stated that Jim

Glasgow in his judgment and understanding had a right to fire him.

In his affidavit Lawrence Jackson deposes that it was the custom and practice that if Chemstrand wanted a man, "they would actually do the hiring;" that "all time records were kept by Chemstrand employees during the time in question," and that "we did not have anything to say about terminating any employee who worked at Chemstrand. This was entirely the responsibility of Chemstrand's supervisors at their Decatur plant."

John Cole, by affidavit, deposed that "Monsanto Company had authority to dismiss such employees and terminate their relationship with Jack's Construction Company. * * * All equipment belonged to Monsanto Company. * * * Monsanto Company determined the number of employees to be used by Jack's Construction Company and determined what work they were to perform, when they were to do it and how they were to do it. * * *"

Plaintiff in his affidavit deposes that he "was hired to work for Jack's Construction Company * * * Jack's Construction Company paid me by their check making whatever deductions that were necessary. * * * I never made any agreement with Monsanto or any of their employees to become an employee of Monsanto."

The facts material to the controversy do not appear to be in dispute.

The Supreme Court of Alabama in a number of cases has declared that:

"The result will be determined by answer to the questions: Whose work was the servant doing and under whose control was he doing it? It is the reserved right of control rather than its actual exercise that furnishes the true test of relationship." Alabama Power Co. v. Smith, 273 Ala. 509, 521, 142 So.2d 228.

Plaintiff was doing Monsanto's work and was doing it under the control of Monsanto. By the very terms of the agreement between Monsanto and Jack's the reserved right of control rested with Monsanto.

It is only where the evidence does not clearly establish who the employer is that consideration must be given to the character of the service to be rendered, the duration of the employment, and the one who is paying the employee, Alabama Power Co. v. Smith, supra, and United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239, and then these factors "are merely aids in determining the relation and do not necessarily determine the relationship." Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323.

In State Farm Mutual Automobile Insurance Company v. Vails, 278 Ala. 266, 177 So.2d 821, the trial court had found that it did not appear from the evidence that there was any consensual relationship between the employee and the party in whose service the employee was using the vehicle at the time of the accident. The trial court was affirmed on the authority of Jeffrey Manufacturing Co. v. Hannah, 268 Ala. 262, 105 So.2d 672, 674, wherein it was said, "there must be *some* consensual relationship between the loaned employee and the employer whose service he enters sufficient to create a new employer-employee relationship." (Emphasis supplied.) The court also quoted with approval from United States Steel Corp. v. Mathews, supra, which followed Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, wherein it was held that in order to relieve the general master from the legal relationship of master and servant, "it must appear that that relation, for the time, had been suspended, and a new like relation between the [servant] and the [special master] had been created."

Following its statement in the *State Farm* case that there was "no consensual relationship * * * sufficient to create an employer-employee relationship between" the employee and the new employer, the court stated, "For a new relationship to be created there must be an agreement between the employee

and the new employer." Judging from the affidavit recently filed by the plaintiff and from his brief, this language is taken to mean that since there was no agreement, oral or written, as such to hire plaintiff as Monsanto's employee that this ends the matter. Obviously, in the last quoted statement the court was referring to the creation of a consensual [1] relationship—not a formal contract engaging the plaintiff as an employee of Monsanto. If such was not the case, there would remain little field for the operation of the loaned servant doctrine. The quoted words from the *State Farm* case must be mirrored in the light of such statements as that found in Alabama Power Co. v. Smith, supra (a decision later than those in *Jeffrey* and *Mathews*), as follows:

> "An employee may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, *with his own consent or acquiescence,* to the service of a third person, so that the employee becomes the servant of such third person with all the legal consequences of the new relation." (Emphasis supplied.)

Although placed on Jack's payroll, plaintiff was hired by Chemstrand to work for Chemstrand, under Chemstrand's direction. He consented to this employment and acquiesced therein. This in the Court's opinion clearly meets the consensual relationship test.

Where under the facts as here exist the only inference that can be drawn is that plaintiff was doing Monsanto's work, under both its reserved right of control and its actual authoritative direction and control, and where as here the consensual relationship between the plaintiff and Monsanto is established, the issue presented by the motion for summary judgment should be and will be determined by the Court. The defendant's motion for summary judgment will be granted.

---

1. *"Law.* Existing or made by mere mutual consent without further act or writ-ing; as, a consensual contract." Webster.