These are appeals by defendant Illinois Central Gulf Railroad Company (ICG) and plaintiff Evan Coleman from jury verdicts against ICG and in favor of defendants Steel City Erection Company, Inc., and Steel City Crane Rentals, Inc. The lawsuit resulted when plaintiff was injured by a tree limb broken off by a crane owned by the Steel City defendants and leased to ICG to clear the wreckage of a train derailment. We affirm.
On October 1, 1978, a train derailed near Tuscaloosa. Plaintiff, a car and wrecker foreman employed by ICG, was one of the workmen sent to remove the wreckage. The evidence disclosed that four groups of workmen are needed to clean up after a derailment: carmen, a track crew, a train crew, and a crane crew. ICG owned a crane and employed a crane crew, but at the time of the derailment they were in Meridian, Mississippi. Therefore, ICG contacted the Steel City defendants and leased a crane and crew for the operation. During the work, the boom of the crane struck and broke off a tree limb, which fell approximately 40 feet onto plaintiff's head. Plaintiff incurred medical expenses and suffered permanent physical impairment as a result of the injury.
Plaintiff brought suit against ICG and the Steel City defendants, alleging four counts of negligence. ICG cross-claimed *Page 500 
against the Steel City defendants seeking indemnity, and Steel City Erection Company cross-claimed against ICG seeking indemnity. At the close of all the evidence, the trial court granted ICG's motion for directed verdict on the cross-claim filed by Steel City Erection Company. The jury returned verdicts in favor of the Steel City defendants and in favor of plaintiff and against ICG in the amount of $500,000. ICG and plaintiff filed motions for new trial, which were not ruled upon within 90 days.
On appeal, ICG argues that the verdict against it was contrary to the preponderance of the evidence, and thus that it was entitled to a new trial. ICG also maintains that the trial court erred in refusing to give various written charges to the jury. Plaintiff appealed the verdict and judgment in favor of the Steel City defendants solely to retain them as defendants in the event his verdict and judgment against ICG were reversed.
ICG maintains that the jury verdict against it and in favor of the Steel City defendants is against the preponderance of the evidence because the jury necessarily found that the members of the crane crew employed by the Steel City defendants became the "loaned servants" of ICG, making ICG liable for their negligence. ICG contends that the trial court should have decided as a matter of law that the crane operators were servants of the Steel City defendants, not of ICG, at the time of the accident.
In determining whether an employee has become a loaned servant the ultimate test is: Whose work was the employee doing and under whose control was he doing it. Dumas v. DumasBrothers Manufacturing Co., 295 Ala. 370, 378, 330 So.2d 426,432 (1976). It is not the actual exercise of control which is determinative but rather the reserved right to control the employee. United States Steel Corp. v. Mathews, 261 Ala. 120,123, 73 So.2d 239, 242 (1954). Where the work of the employee is part of a large undertaking, mere suggestions as to details necessary for a cooperative effort must be distinguished from actual authoritative direction and control. 261 Ala. at 124,73 So.2d at 242.
In the present case, there was considerable evidence taken on this issue. The crane crew was employed and paid by Steel City, which in turn billed ICG for the services. Steel City decided which of its employees to send on any particular assignment. If ICG was dissatisfied in the work, it could dismiss the entire crew, but only Steel City could fire one of its employees. The employees testified that they were working for Steel City and assisting the railroad in clearing the tracks. There was evidence that the positioning of the crane and the movement of the boom were decisions left entirely to the crane crew without direction from the railroad supervisors. However, there was also evidence that ICG employees specified the way in which the line was to be cleared, the location where the crane crew should begin working, the order of the cars to be put back on the tracks, and the time when the crane crew could leave the site. Railroad employees hooked the crane to the cars and signaled when the crane should lift the car. One of Steel City's crane operators testified as follows:
 "Q. All right. Now, when you reported to that job site at Stokes, are you there for — what purpose are you there for when you report to the job site?
 "A. To assist the railroad in clearing the line, or picking up the cars, or whatever they want me to do. I am there to do what they want to do. They called for help.
"Q. How long would you stay there?
"A. Until they released me.
". . . .
 "Q. All right. And who would tell you what you were going to do and when you were going to do it after you got on the job site?
". . . .
 "A. Yes, the ICG officials would tell us what to do.
". . . . *Page 501 
 "Q. Well, I will ask you this. Did you do anything on this particular job site that you were not instructed to by the ICG railroad officials to do?
"A. No, sir."
There was also evidence from which the jury could infer that the ICG employees worked with the Steel City crane crew in the same manner they would have worked with the ICG crane crew that was unavailable at that time.
Although the question is a close one, there is sufficient evidence from which the jury could have concluded that ICG employees went beyond suggestions for a cooperative effort and exercised supervisory control over the actions of the Steel City crane crew. If reasonable persons can reach different conclusions on the question of whether a servant of one employee has temporarily become the servant of another, it is a question of fact for the jury. United States Steel Corp. v.Mathews, 261 Ala. at 123, 73 So.2d at 241-42. A jury verdict is presumed to be correct and will not be reversed unless the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that it is wrong and unjust. Shelby County v. Oldham, 264 Ala. 626, 627,89 So.2d 106, 107 (1956). The presumption of correctness accorded a jury verdict is strengthened when the trial court denies a motion for a new trial. TGY Stores v. Atchley, 414 So.2d 912, 914
(Ala. 1982). Although the motions for new trial were automatically denied under the provisions of Rule 59.1, A.R.Civ.P., the trial court later entered an order purporting to deny the motions.
We hold that the verdict was not manifestly unjust as against the preponderance of the evidence.
ICG contends that the trial court erred in not giving certain requested written charges and explanatory charges to the jury. Requested charge X instructed the jury that the members of the crane crew were not employees of ICG. This charge was not appropriate, since, as we have already held, the loaned servant issue was a question of fact. After the trial court refused to give charge X, ICG requested the following written charge on the law relating to the loaned servant doctrine:
"JURY CHARGES ON ISSUE OF BORROWED SERVANT DOCTRINE
 "The Court charges you as follows with respect to the claim or contention by defendant Steel City Erection that the members of its crane crew were `loaned to,' and thus considered employees or servants of, defendant Illinois Central on the occasion when plaintiff sustained injuries, and that defendant Illinois Central is accordingly liable for any negligent acts of the crane crew members. Defendant Illinois Central denies that the crane crew members were other than the employees of the Steel City defendants. In determining the question of whether the crane crew members should be deemed to be the servants or employees of defendant Steel City Erection or defendant Illinois Central on the occasion plaintiff was injured, all competent and relevant evidence with respect to this issue should be considered, including facts relating to these questions and rules:
 "Whose business was being performed by the crane crew members and under whose ultimate power and control were they operating? In considering the question of control, a distinction should be considered between authoritative direction and control, and mere suggestion as to details or the necessary cooperation where the work furnished is part of larger undertaking.
 "Who hired the crane crew members, who paid them, and who had the right to discharge them?
 "Was there any consent or acquiescence on the part of the crane crew members to suspend their employ by Steel City Erection and to change and to become the employees of Illinois Central?
 "Who had the right to select which individuals would serve as the crane crew members, the power of substitution *Page 502 
of the crane crew members, and the power to discharge such persons?
 "Who owned, selected and supplied the crane being used by the crane crew members at the time of the accident?
 "Consideration may be given to a comparison of the duration of the employment of the crane crew members by Steel City Erectors and the duration of alleged employ by Illinois Central as a factor in where the proper employment relationship exists.
 "This issue is a question of fact to be determined by you, based upon the evidence in this case."
The following oral charge given by the trial court, although not couched in the same specific language, sufficiently sets forth the principles of the loaned servant doctrine as they are found in case law:
 "You have heard reference to the fact that the Defendant Steel City contends that these three individuals were — different terms have been used, but the net effect of the terms is to say that these three individuals were at the time in question not the agents, servants or employees of Steel City, but rather were the agents, servants or employees of the railroad. Now, I want to give you some instructions which will be helpful in considering this question. It is for you to determine what the relationship between these parties and individuals was. But an employee may be in the general service of another and, nevertheless, with respect to particular work may be transferred with his own consent or acquiescence to the service of a third person so that the employee becomes a servant of the third person with all the legal consequences of the new relation. Whether one who is usually the servant of one master has become specially and temporarily the servant of another is a question of fact for you ladies and gentlemen to determine. Now, in determining that, you need to answer these questions: Whose work was the servant doing and under whose control was he doing it? And it is the reserved right of control rather than the actual exercise that furnishes the true test of the relationship. He is master who has the supreme choice of control and direction of the servant and whose will the servant represents in the ultimate results and in all details. There must be careful distinguishing between authoritative direction and control and mere suggestion as to details or necessary cooperation where the work furnished is part of the large undertaking. The fact that the borrower gives information and direction to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person. Where the evidence does not clearly establish who the employer is consideration must be given to the character of the service to be rendered, duration of the employment and the one who is paying the employee."
ICG contends that the charge is defective with respect to the requisite intent of the employee and requested charge Y, which states that the crane crew members must have agreed to suspend their employment with Steel City and become employees of ICG in order to be considered loaned servants. The oral charge quoted above specifically states that an employee "may be transferred with his own consent or acquiescence to the service of a third person." After reviewing the entire charge to the jury, we find that the issues were fairly covered. We cannot reverse for the refusal to give requested written instructions where the same rules of law were substantially and fairly covered in the trial court's oral charge. Rule 51, A.R.Civ.P.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 503