Felipe Pérez Díaz, etc., Plaintiff and Appellee, *v.* Hato Rey Building Company, Defendant and Appellant; Elmer Valladares, Codefendant and Appellee.

No. R-69-202.    Decided October 17, 1972.

*Emilio De Aldrey, Polo, Rivera Mercado & Lasa* and *Ulpiano Falcón Matos* for appellant. *Ernesto Juan Fonfrías* and *Enrique Leo Henríquez* for appellees. *José H. Picó* for codefendant-appellee.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question to be decided in the instant case is whether appellant, Hato Rey Building Company, a work contractor, is liable for the damages caused to a boy when the latter was run over by a truck of codefendant-appellee, Elmer Valladares, driven by Juan Oquendo, while conveying fill for said appellant.

Contrary to the decision of the trial court, we conclude that under the circumstances of this case, Oquendo was not appellant's employee when the accident occurred and, therefore, appellant is not liable for the damages to the minor caused by the negligent action of said driver. Hereinafter we set forth the grounds on which we base this conclusion.

The question centers primarily about the facts of the case as they appear from the evidence presented. It is therefore necessary to narrate the pertinent facts with all the details.

Appellant, Hato Rey Building Company, was engaged in the preparation of land for the purpose of urbanization. Defendant appellee, Elmer Valladares, was the owner of a Mercury truck driven by Juan Oquendo. The trial court concluded that:

"4.—At the time of the accident, December 20, 1963, the truck was engaged in carrying fill for Hato Rey Building Company. Hato Rey Building Company paid to Valladares according to the number of cubic meters of fill which the truck conveyed

during the day. Valladares paid the driver and he also paid the truck's maintenance and operation expenses.

"Hato Rey Building Company fixed the route which the driver of the truck should follow while conveying the fill. The driver could not leave that route. Likewise it indicated the place where work was to be performed on each day in particular. It fixed the time for beginning work in the morning and the time of departure in the afternoon. It also fixed lunch time and likewise it determined the time during the morning when work was stopped for a quarter of an hour so that the workers could have coffee. If the driver was absent or late he was replaced and then he had to wait for a new opportunity to get work.

"5.—On the afternoon of December 20, 1963, the minor Roberto Eduardo Pérez de Jesús was talking with Manuel Torres Huertas on the walk of the highway which leads to the National Cemetery. While he was there he was run over by the aforementioned truck, suffering the injuries described hereinafter."

As a question of law the trial court concluded that:

"III.—In view of the degree of control and dominion which Hato Rey Building Company exercised over the movements of the truck involved in the instant case, neither Elmer R. Valladares nor the driver Juan Oquendo may be considered as independent contractors. It is rather a leased truck whose rent is fixed by the unit of work performed. Though the driver of the truck was paid by Elmer R. Valladares, the former was under the complete control and dominion of Hato Rey Building Company, reason why there existed a true employer and employee relationship between that enterprise and the driver of the truck."

By virtue thereof the trial court in its judgment sustained the complaint and cross-complaint, ordering appellant and Valladares to pay the damages caused to the minor which were estimated at $10,000 plus $500 for attorney's fees and ordered appellant to reimburse Valladares any amount which the latter is bound to pay as a consequence of said judgment.

Feeling aggrieved by said judgment, the Hato Rey Building Company appealed before this Court alleging that the

trial court erred in concluding that at the time of the accident the truck in question was being used rather as a leased truck "when the evidence shows that Valladares at that moment was an independent contractor."

The evidence shows other elements of the relationship of the parties in question to which the trial court did not make specific reference in its findings but which must be considered in order to determine whether pursuant to § 1803 of the Civil Code in force[1] Oquendo was, in effect, appellant's employee when the accident occurred. These elements are the following:

(1) The owner of the truck decided in what project the truck was going to work. If he wanted to take it to another project he could do so.

(2) Appellant could not make use of the services of Valladares' truck as he did with his own trucks.

(3) There was only one available route to convey the fill in question so that in effect appellant did not designate the route which the truck should follow.

(4) Appellant did not demand from the trucker a specific number of daily trips nor was he asked to convey a specific number of cubic meters of fill.

(5) Neither could appellant use the truck for any purpose other than to convey fill.

(6) Valladares testified that Oquendo was his driver; that he did not work for appellant; that he, Valladares, gave the truck to Oquendo "at a percentage" the latter being able to work at his discretion wherever he wanted to; he could convey sand, stone, where he obtained the higher benefit; that when Oquendo wanted to take vacation leave or when he was sick he delivered the truck or looked for another driver to replace

---

[1] Paragraph 4 of § 1803 (31 L.P.R.A. § 5142) provides that:

"Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties."

him or Valladares "could get another driver and continue collecting earth."

The evidence with regard to the replacement of the truck (the trial court erroneously made reference to the replacement of the driver) when the driver was absent or when he was late to the working place fixed by appellant, was the following:

"Q. If a driver was absent one day, could he go back to work the next day?

A. If the truck had not been replaced he came, if another truck had been taken to replace him, then he had to go away until there was a new opportunity.

Q. That is, if he was absent one day or more than one day his coming back to work depended on whether he had not found another. Whether or not his truck was necessary; if it was necessary he continued working.

A. Yes, Your Honor, exactly."

■■ The disposition of the present appeal depends, consequently, of a determination to the effect of whether or not there existed at the time of the accident a relationship of independent contractor between the Hato Rey Building Company and Elmer R. Valladares or Juan Oquendo, since an owner, as a general rule, is not liable for the negligent acts of an independent contractor or of an employee of the latter. *Mariani* v. *Christy,* 73 P.R.R. 729 (1952); *Barrientos* v. *Government of the Capital,* 97 P.R.R. 539, 547 (1969). In order to determine whether the relationship between two parties to a contract of services are of master and servant or of principal and independent contractor we have invariably resorted to the criterion of the control retention. *Mariani* v. *Christy, supra; Landrón* v. *Labor Relations Board,* 87 P.R.R. 87 (1963); *Sec. of Labor* v. *Pedro A. Pizá, Inc.,* 86 P.R.R. 423 (1962). It was thus established in *Mariani, supra,* in which case it was stated at pp. 744–745:

■ "The most important test refers to the control over the work which is reserved by the employer. Regardless of whether or not it is exercised, the important fact is the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. It is equally important to determine whether the instructions given will have to be followed. This same control may be exercised in several ways and the relationship between the parties might be determined according to the manner the control is exercised in the light of the circumstances of each case. If the means and manner of performance of the work are controlled, the person in charge of the work would be a servant and an independent contractor relationship would exist where the person performing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Retention by the owner of the right to inspect and supervise is compatible with the status of an independent contractor. The control of workmen doing manual labor is an important element, but if the owner reserves the right to discharge the workmen of an alleged contractor, such power tends in some degree to prove that the contractor is not independent. Furthermore, it is important to determine whether the owner furnishes the workmen and appliances to do the work, although that is not decisive. As to compensation, an independent contractor relationship arises when the contractor undertakes to perform the stipulated work for a specific sum and when his remuneration is computed with reference to the quantity of work performed by him. Nevertheless, the fact that the payment is made on the basis of the quantity of work does not imply by itself the existence of an independent contractor relationship where the rest of the evidence shows that the person employed is a servant. The identity of the person who pays the employees is a circumstance to be considered, although the possibility that a person pays the wages expecting to be reimbursed, cannot be ignored. Another important element is the power to terminate the contract at any time, since that fact would show that the person employed is not an independent contractor. It is also possible that a person may be an independent contractor as to certain work and yet be a servant as to other work for the same employer, and the decision would depend on the actual situation when the injury was inflicted."

■ Such principles are but an elaboration *in extenso* of the subsequent pronouncement made in *Landrón, supra* at p. 94, ". . . that the correct approach is to consider the total of circumstances, since except for rare instances such a sharp distinction between an employee and an independent contractor cannot be drawn with infallible certainty. Normally in this type of relationship there are indistinct characteristics of either classification. That is why it is necessary to make an analysis of all the circumstances in order to be able to form a judgment which is nearest to the reality."

■ In the specific determination of whether the operator of a leased machine or vehicle is going to render the lessor or lessee of the equipment liable with his negligent acts,[2] the courts in the North American jurisdictions have considered the following factors: the right to select the operator; the right to discharge the operator (and this one has been given specially great weight); the right to supervise and direct, not merely the work to be done, but the method by which it should be done; and the manner in which the operator is paid, whether by the lessor directly, by the lessee indirectly through the lessor (the former compensating the latter for the operator's wages), or by the lessee directly. *Liability Under Respondeat Superior Doctrine for Acts of Operator Furnished With Leased Machine or Motor Vehicle*, 17 A.L.R.2d 1388 (1951).[3]

---

[2] "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." *Restatement of Agency* 2d, § 227 (1958).

[3] *H. E. Wolfe Const. Co.* v. *Fersner*, 58 F.2d 27 (4th Cir. 1932), however, accepts as an indicative criterion of sufficient control by the lessee, the fact that the latter or his agents directed the loading and unloading of the truck at each end of the haul, despite the fact that the lessor, who received an agreed price for each load of material, furnished the trucks with the drivers, took care of the repairs and maintenance of the trucks and paid and exercised the power to discharge the operators. *Dobson* v. *Baxter Chat Co.*, 85 P.2d 1 (Kans. 1938), gives special emphasis to the

■ ⸱ The evidence in the instant case does not show that appellant exercised such degree of control over the driver of the truck to the point of justifying the conclusion that in effect he was his servant. The only elements of such control were the specification of the places to load and unload and the working hours. But the thing is that for Valladares and his driver Oquendo to be able to give the contracted service of hauling it was necessary that appellant inform him such places and hours. As to the route, actually, appellant did not fix it for at the moment of the accident, instead of there being alternate routes from the loading to the unloading place there was only one which Oquendo necessarily had to use. On the contrary, the evidence shows that Valladares received from appellant the price agreed upon for the hauling service which his truck rendered to the latter, and Valladares in turn paid

---

fact that the owner of the trucks was not contracted to do any certain number of loads, but that he was paid for those which he made, reason for which it is said that he was not an independent contractor, since an independent contractor is one who contracts to do a certain piece of work. That is to say, that the employer had an unrestricted right to end the employment. *Western Express Co.* v. *Smeltzer*, 88 F.2d 94 (6th Cir. 1937), *cert. denied*, 302 U.S. 698, also imposes liability upon lessee despite the fact that the lessor paid the⸱operator, that there was no lessee's agent giving orders during the hauls and that the payment was made by the trip. The court emphasizes the fact that the operator hauled exclusively for defendant, that the latter specified the time to perform the hauling and supervised the method by a system of written reports, the driver was "permitted" to follow either of two routes and that he indicated what load to take, when to take it, how to proceed, and when to return.

To the principles thus summarized it is necessary to add that the important thing is not the true exercise of the control, but the determination of from where does the right to control the employee take root. *Southern Cement Co.* v. *Patterson*, 122 So.2d 386 (Ala. 1960); *Dobson v. Baxter Chat Co., supra.* It is assumed that in driving and operating the leased vehicle, the operator remains subject to the control and is the servant of the lessor for whom he performs said work regularly but this presumption is rebuttable. *Antonelly* v. *Adam*, 221 N.W. 716 (Minn. 1928). See, also, *Malifski* v. *Indemnity Ins. Co. of N.A.*, 135 F.2d 910 (4th Cir. 1943); *Baltimore Transit Co.* v. *State*, 40 A.2d 678 (Md. 1945); *Pennsylvania Smelting & Refining Co.* v. *Duffin*, 70 A.2d 270 (Pa. 1950). But, see, *Rodríguez* v. *Pérez, infra.*

the driver of the truck the participation agreed upon for his services after deducting the gasoline and other maintenance expenses of the vehicle.[4] The agreement of the hauling service was so informal that any of the parties could end it at any moment and, also, they resumed it at the convenience of any of them.

█ In our opinion we cannot accept the control thesis embodied in the cases of *H. E. Wolfe Const. Co., supra,* and *Western Express Co., supra,* since § 1803 of our Civil Code requires a master-servant relationship between the enterpriser and the tort-feasor. The trial court held the Hato Rey Building Company liable on the ground that it was rather a question of a leased truck than of an independent contractor relationship. The fact that it is a question of a leased truck, however, does not establish *ipso jure,* lessee's liability. It merely establishes, contrary to other jurisdictions previously mentioned, a presumption *juris tantum,* that the driver is the lessee's servant or agent and that he acted in the course of the fulfillment of his functions if, as in the instant case, at the time of the accident the truck was used in connection with lessee's businesses. *Rodríguez* v. *Pérez,* 65 P.R.R. 644 (1946). The evidence presented in the instant case, however, destroyed that presumption.

The circumstances of the case are distinguishable from those of *Rodríguez* v. *Pérez, supra,* for in the latter the owner of the vehicle furnished only the vehicle which was driven by an employee of the contractor. It is also distinguished from that of *Hernández* v. *De Jesús,* 70 P.R.R. 1 (1949), since there the lessee of the truck was driving the vehicle when he caused the accident. For obvious reasons the case of *Pereles* v. *Ongay Garage & Radio Co., Inc.,* 60 P.R.R. 7 (1942), is likewise distinguishable.

---

[4] Valladares did not deduct social security from the drivers of his vehicles because he considered them independent truck drivers.

Our conclusion finds support in the cases of *González v. San Luis Transport Co.*, 77 P.R.R. 894 (1955) and *Colomé v. Guánica Centrale,* 16 P.R.R. 442 (1910).[5]

In *Jesús Rivera* v. *Víctor Cruz and Amrex Construction Co.,* R-63-155, judgment of February 15, 1965, under circumstances similar to those of the case under consideration, we concluded that the contractor was not liable for the negligence of the driver of a truck of an enterprise which contracted the loading of stones from the contractor's quarry, the enterprise furnishing to those effects the truck and its driver.

For the reasons stated the judgment should be reversed in part and to those effects the complaint as well as the cross-complaint should be dismissed insofar as they hold appellant liable for the damages sustained by the minor in question as well as for the payment of attorney's fees. The judgment thus modified should be affirmed.

Mr. Justice Rigau issued a concurring opinion. Mr. Justice Torres Rigual concurs in the result.

—O—

MR. JUSTICE RIGAU, concurring.

San Juan, Puerto Rico, October 17, 1972

I concur with the result. The case is a borderline case. Compare the findings of fact of the trial court in the instant case and what we said in *Mariani* v. *Christy*, 73 P.R.R. 729, 744–745 (1952) and in *Landrón* v. *Labor Relations Board,* 87 P.R.R. 87, 94 (1963). For that reason I reserve the right to express myself on this situation on a future opportunity.

---

[5] See the monograph of Rafael Vizcarrondo, entitled *Responsabilidad Extracontractual del Arrendatario por Daños Causados por Vehículos o Máquinas Arrendadas de un Contratista Independiente,* 23 Rev. C. Abo. 161 (1962–63).

I think that from a social point of view in a situation as the one at bar, which involves the civil liability of the owners and operators of trucks, it is proper to ask whether or not that daily and considerable risk under which the population is placed by those trucks should be compulsorily covered by operation of law or of the Public Service Commission by an economically adequate policy.

In the absence of that type of protection, in elaborating our case law concerning this matter we will have to consider those factors which I have mentioned and place the liability where it should fall. Probably said liability should be placed primarily on the owners and operators of the trucks and in default thereof on the construction industry which is the one which directly or indirectly places day by day that fleet of trucks moving along our streets and highways. I understand that said risk is an unavoidable one so that the construction industry may work—at least under the present technology—but the same may be reduced by driving the trucks with great care. In any event, said risk should be covered.