Plaintiffs appeal from a judgment based on a jury verdict for defendants in a negligence action. Plaintiffs claim the trial court erred in: (1) refusing to instruct the jury on mental anguish, and (2) allowing the introduction of evidence concerning plaintiffs' insurance coverage. We find no error and affirm the judgment below. We set out relevant facts in the following discussion of these two issues.
 ISSUE I
Plaintiffs argue that the trial court committed reversible error in refusing to instruct the jury on mental anguish.
Even assuming that the trial judge erred in failing to instruct the jury as plaintiffs requested,[1] because the alleged error concerns the measure of damages and because the jury's verdict was in favor of the defendants, the action of the trial judge, if error, was harmless. McCullough v. L. N.R. Co.,396 So.2d 683, 685 (Ala. 1981); Graves v. Wildsmith, 278 Ala. 228,177 So.2d 448 (1965).
Even had the verdict been in favor of the plaintiffs, we do not believe any error is shown.
We have held before that "`where there has been a physical injury to a person, under circumstances warranting the recovery of compensatory damages therefor, mental suffering, which is a natural incident thereto, furnishes one of the elements of recoverable damages[,]'" but "`as a general rule, the law will not permit the recovery of damages for mental distress, where the tort results in mere injury to property.'" B.F. GoodrichCo. v. Hughes, 239 Ala. 373, 379, 194 So. 842, 847 (1940). Furthermore, Rule 51, Ala.Civ.P., *Page 1125 
requires specificity in objections to instructions or to a failure to instruct. Here, the trial judge did not violate the spirit of Rule 51.
 ISSUE II
Plaintiffs next argue that the trial court erred in allowing the introduction of evidence concerning their insurance coverage. In the record, during defense counsel's cross-examination of one of the plaintiffs, we find the following:
 "Q All right, sir. Now, at the time that this fire took place, then, your trailer — your mobile home, I mean, it was insured, wasn't it?
 "A It was insured by Foremost Insurance Company. Taken out by Percy Wilson.
 "Q And, of course, you signed what's been marked as Defendant's Exhibit No. 4 here, a sworn statement in proof of mobile home loss, didn't you?
 "A Yes, sir. I believe that's the one that had my signature on it.
"Q Right. Okay.
"A Yes, sir.
 "Q Of course, it says it was subscribed and sworn to before a notary public, doesn't it?
"A Yes, sir.
 "Q All right. Now, in that document under actual cash value at date of loss, what does it say?
"A It says $10,795.
 "Q All right. Let me ask you a question. You are aware of the fact that, of course, there was some estimates made on this same type mobile home, aren't you, by your insurance company?
 "[PLAINTIFFS' COUNSEL:] Well, Judge, I'm going to object to that now.
"THE COURT: Overruled.
Assuming arguendo the sufficiency of the objection by plaintiffs' counsel to the foregoing testimony, we find no error, because plaintiffs' own counsel first elicited evidence as to plaintiffs' insurance coverage, as we shall show. The following exchange took place on direct examination between plaintiffs' counsel and the same plaintiff whose cross-examination is quoted from above:
 "Q All right. Now, did you have a mortgage on that mobile home when it burned?
"A Yes, sir, I did.
"Q Who was the mortgage company?
"A Percy Wilson Mortgage Company.
 "Q Did they require that you have any type of insurance on it?
 "A They are the ones that took the insurance on it, not I.
"Q Did you — (interrupted).
 "A I paid the premiums. They took the insurance; I paid the premiums.
 "Q Did you recover anything from, I believe that was Foremost Insurance Company, was it not?
"A Yes, sir.
 "Q Did you recover anything from Foremost Insurance Company?
"A Yes, sir. They paid me — you want the figures?
"Q Yes, sir. Did you jot those figures down?
 "A Yes, sir, I did. I don't have a copy of them, but . . .
"Q Let me ask you if this is your copy of them?
"A Yes, sir, it is.
 "Q All right. How much did they pay you for the mobile home?
"A All right. They paid me $10,795.
 "Q All right. And how much did they pay you for your personal property effects?
"A $3,254.
 "Q And I believe that was the policy limits, was it not?
"A That's what the man said.
"Q All right. And what else did they pay you for?
 "A They paid me $508 for my front and rear porches that was built.
"Q All right. How much does that come to?
"A That comes to a total of $14,557. *Page 1126 
"Q Fourteen thousand five hundred and how much?
"A Fifty-seven.
 "Q Fifty-seven dollars. All right, now, when you — when you received that money from Foremost, did you enter into an agreement with them that it would be refunded out of any money that you recovered?
"A Yes, sir, we did.
"Q A subrogation agreement?
"A Yes, sir.
 "Q Part of the insurance contract that you had or that Foremost had with them?
"A Right.
 "Q And so it's your understanding that whatever verdict you receive in this case, the first $14,557 is to go back to Foremost Insurance Company?
"A Yes, sir."
A party cannot introduce evidence, object unsuccessfully to the same evidence when introduced by an opposing party, and then successfully claim error on appeal. State Farm MutualAutomobile Ins. Co. v. Boyer, 357 So.2d 958, 963 (Ala. 1978).See also, Murray v. Alabama Power Co., 413 So.2d 1109 (Ala. 1982); Gardner v. Stevens, 269 Ala. 213, 111 So.2d 904 (1959).
We have reviewed plaintiffs' other arguments and find them to be without merit. Therefore, the judgment appealed from is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] Plaintiffs requested the trial court to instruct the jury as follows:
 "If you are reasonably satisfied from the evidence that the plaintiffs have undergone mental anguish as a proximate result of the injury in question, you should award a sum which will reasonably and fairly compensate them for such mental anguish suffered by them."
The trial court refused to give their requested instruction, but did, in its oral charge, state the following:
 "The law has fixed no monetary standards to compensate a person for physical pain and suffering. Such an element of damage is left to the good sound judgment and discretion of the jury as to what amount would reasonably and fairly compensate a party for such physical pain and suffering as you might find from the evidence that a party did suffer. It's for you to determine from the evidence the nature, extent, and duration of Mr. Tubbs' injuries in this case. If you're reasonably satisfied from the evidence that Mr. Tubbs has suffered injuries, whether temporary in nature or permanent, and that those injuries resulted or proximately resulted from wrongs complained of, then you should include in your verdict such sum as you determine to be reasonable compensation for those injuries to the extent that you find those injuries exist."
At the conclusion of the court's instruction to the jury, the following occurred:
 "THE COURT: Ladies and gentlemen, I didn't give you an example of each and every claim made by each and every person because you heard the evidence. Naturally the mobile home is an issue. I hope everybody understands that. Nobody is saying forget the mobile home.
 "MR. MOUNTAIN: Thank you. And I assume there was a claim and I just may have dozed off on this, but on mental anguish and pain and suffering for Ricky Tubbs. You gave that general charge — (interrupted).
"THE COURT: Yes, sir.
 "MR. MOUNTAIN: Okay. And we have, of course, we want to — I'm going to let Herbert reiterate our claim for mental anguish or loss of home. I'll let Herbert be more specific on that.
"THE COURT: Well, it's denied but go ahead.
"MR. MOUNTAIN: For the record, we'd like to have it in.
 "MR. NEWELL: For the record, we would like to state our objection to the Court's failure to charge for mental anguish for loss of the home. It's my understanding the reasoning in the cases which have denied that is because it's too speculative. Of course, the cases on warranty of habitability in a home allow the jury to consider mental anguish on the basis that it is not too speculative.
 "THE COURT: Well, I don't know — Mr. Newell, I don't know where you're getting all this speculative business. I haven't used the word speculative anywhere in this trial pertaining to mental anguish. You're making statements that I denied it for some particular reason. I denied it because it was not justified in this case under the law.
 "MR. MOUNTAIN: Okay, well, we just really basically want to preserve our claim for mental anguish."