516 So.2d 509 (1986)
REINHARDT MOTORS, INC.
v.
Randolph BOSTON.
85-6.
Supreme Court of Alabama.
October 3, 1986.
On Return to Remand May 15, 1987.
Rehearing Denied September 4, 1987.
Roger S. Morrow of Whitesell, Morrow & Romine, Montgomery, for appellant.
Robert D. Segall and Lee H. Copeland of Copeland, Franco, Screws & Gill, Montgomery, for appellee.
*510 JONES, Justice.
This is an appeal from a judgment based on a jury award in favor of Plaintiff Boston in a suit for fraud against Reinhardt Motors. These are the facts, viewing the evidence most favorably toward the plaintiff: Boston noticed that his car was losing engine coolant, and took the car to Reinhardt Motors for repairs. Boston had taken his car to Reinhardt several times before for routine maintenance and trusted the people who worked there.
One of the mechanics looked at the car and suggested that there might be a problem with the engine head. Boston talked to the shop supervisor, Mr. Reinhardt, who recommended that he have the head gasket replaced before any work was done on the head to see if that would correct the problem. Boston purchased the necessary parts, but the mechanics at the shop were too busy to perform the repairs at that time. Boston returned a few days later to have the repairs made on his car.
When he returned, Boston was told that replacing the head gasket would be of no use because his engine head was cracked. The mechanic removed the engine head and showed Boston four marks along the sides, which he explained were the visible cracks in the engine head. Boston questioned the mechanic and Mr. Reinhardt about this, but then agreed to their replacing the engine head.
Boston took the old engine head to an auto parts shop to discover why it had cracked. He was informed there that the part was not cracked, and that the markings that he was shown were in fact factory markings that had been placed there at the time of manufacture. When Boston called Mr. Reinhardt to complain, he was assailed with insulting and abusive language.
Boston brought this suit, claiming fraud and suppression of material facts. The suit was tried before a jury, which found in Boston's favor and awarded compensatory and punitive damages in the amount of $100,480. The trial judge refused Defendant's motions for directed verdict at the close of Plaintiff's case, at the close of Defendant's case, and at the close of all the evidence. In addition, the trial judge denied Reinhardt's alternative motions for judgment notwithstanding the verdict or a new trial, as well as a motion for remittitur. Reinhardt Motors appeals, alleging twelve grounds of reversible error.
Defendant first contends that there was insufficient evidence to submit the count for fraud to the jury. Primarily, it argues "that any statements made by Defendant's employees were mere expressions of opinion that would not support an action for fraud." Defendant cites two recent cases as support for its proposition, both of which are readily distinguishable from the case at bar.
The first case, Jones v. McGuffin, 454 So.2d 509 (Ala.1984), involved a suit for misrepresentation against a structural engineer. The McGuffins conditioned their purchase of a certain home upon a favorable report by a structural engineer. Jones, the engineer, inspected the home, noted several cracks in the walls, but stated that "in his opinion" the house was in excellent structural condition. Within months of having moved into the house, the McGuffins had to spend over $12,000 to repair the foundation of the house. The Court held that "mere statements of opinion are not material facts upon which actions for legal fraud can be maintained." 454 So.2d at 512.
The second case relied upon by Defendant is Reynolds v. Fowler Pest Control & Insulation, Inc., 479 So.2d 1185 (Ala.1985), in which a similar situation occurred. As a part of the Veterans' Administration financing for the purchase of a new home, the Reynoldses had the house inspected for termite damage. The report noted the presence of termites, but made no notation of any damage, only that corrective measures had been taken. Shortly after moving into the house, the Reynoldses discovered that the house had substantial termite damage. Fowler was able to escape liability because of several disclaimers which accompanied its report.
Both of those cases are distinguishable from the situation here presented. Unlike *511 those two cases, where, after visual inspections, written reports were submitted estimating the condition of invisible portions of homes, the Defendant here was able to dismantle and observe every angle of the engine head. If there had been any question as to the condition of the part, the Defendant could easily have subjected it to several inexpensive tests. Also, unlike the defendants in those two cases, the Defendant here, rather than reporting that it believed a condition did not exist, Defendant's employees here affirmatively stated that there were cracks in the engine head, and even pointed to factory markings on the part and asserted that they were cracks.
Therefore, these assertions were not "mere expressions of opinion"; they were statements of objective facts, which the jury was authorized to believe were made by experts who knew that they were false and that they were made with the intent to deceive.
Defendant's second allegation of error is that there was insufficient evidence to submit to the jury a count based on suppression of material facts. It is undisputed that Defendant did not inform Plaintiff that it was impossible upon visible inspection to state with certainty that the engine head was cracked, or that there were several inexpensive tests which could have been conducted to determine whether the head was cracked. On the contrary, Defendant stated positively that the head was cracked. There was sufficient evidence to allow the count based on suppression of material facts to go to the jury. § 6-5-102, Code 1975.
The third allegation of error involves the issue of damages for mental anguish, which the trial court allowed to go to the jury. Defendant here argues that damages for mental anguish are not appropriate in a tort such as this. In support of this proposition, Defendant cites Hayes v. Newton Bros. Lumber Co., 481 So.2d 1123 (Ala.1985), and B.F. Goodrich Co. v. Hughes, 239 Ala. 373, 194 So. 842 (1940), both of which quote from Birmingham Waterworks Co. v. Martini, 2 Ala.App. 652, 657, 56 So. 830, 832 (1911).
Both Hayes and B.F. Goodrich state the general rule that the law will not allow recovery of damages for mental distress where the tort results in mere injury to property. While this is the general rule, there is a well established exception. Where the injury to property is committed under circumstances of insult or contumely, mental suffering may be recoverable. B.F. Goodrich Co. v. Hughes, supra. See, also, Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975) ("the authorities all recognize that where the wrong is willful rather than negligent, recovery may be had for the ordinary, natural, and proximate consequences though they consist of shame, humiliation, and mental anguish"); Dawsey v. Newton, 244 Ala. 661, 15 So.2d 271 (1943) ("When a trespass to property is committed under circumstances of insult or contumely, mental suffering may be compensated for when it is a proximate consequence."); Smith & Gaston Funeral Directors v. Wilson, 262 Ala. 401, 79 So.2d 48 (1955) ("That mental anguish is recoverable in an action of trespass to property committed `under circumstances of insult or contumely' is well recognized").
This Court pointed out in Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala.1979), that "[t]he general measure of recovery for fraud includes all damages within the contemplation of the parties or which are the necessary or natural and proximate consequences of the wrong. This is a factual determination to be made by the jury." Whether the tort is committed under circumstances of insult or contumely is a question properly left to the determination of the jury. Dawsey v. Newton, supra.
Moreover, the restrictive language of the general rule ("when the tort results in mere injury to property") is material to our inquiry. Although Boston's automobile was the underlying subject of Reinhardt's intentional misrepresentation, the tort did not result in mere injury to the property. The tort and its consequent injury were committed not upon Boston's car, but upon him personally. The replacement of the engine head, though unnecessary under the *512 circumstances, did not result in injury to Boston's property.
To be sure, the evidence discloses that it was primarily because of Defendant's rude and insulting language and treatment to which Boston was subjected, accompanied by the resultant unnecessary cost of repair, that this action was pursued. Boston presented evidence which, if believed by a jury, would support the claim for damages for mental anguish. Therefore, the trial judge was correct in submitting that issue to the jury.
Next, Defendant alleges that there was insufficient evidence to support the submission of the issue of punitive damages to the jury. As support for its position, Defendant cites Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970), and several other cases, all of which stand for the proposition that punitive damages will not lie unless the fraud is perpetrated "grossly, maliciously, oppressively, and with an intent to deceive."
The evidence presented at trial was sufficient for a jury to determine that an intentional fraud was committed. "The Court [has] recognized that, if the misrepresentation is shown to have been made knowing that it is false, then the law permits punitive damages by way of punishment." Big Three Motors, Inc. v. Smith, 412 So.2d 1222, at 1224 (Ala.1982).
Defendant's next two allegations of error concern the admission into evidence of two of Plaintiff's exhibits, and testimony surrounding them. Defendant's principal objection is that Roy Kelley, the auto parts store superintendent who gave the testimony, did not personally perform the tests. The two exhibits introduced over Defendant's objections were properly authenticated as business records. Also, it was shown that Mr. Kelley was the superintendent of the shop, and that he was aware of the shop's record keeping procedure.
Dean Gamble has set forth the test for admissibility of business records. See C. Gamble, McElroy's Alabama Evidence § 254.01(3) (3d ed. 1977). Applying that test, we find that the Plaintiff's exhibits 7 and 8 were properly admitted by the trial judge, and that there was no error in allowing Mr. Kelley's testimony.
Defendant next asserts that it was error for the trial judge to allow the testimony of Plaintiff's witness Wesley Simmons. Mr. Simmons performed new tests on the engine head a few days before the trial began. Plaintiff never informed Defendant before trial that the tests had been performed or what the results of the tests were. Defendant claims that this violation of discovery rules entitles him to a new trial. While nondisclosure is a practice to be heartily discouraged, ordinarily the ultimate decision of whether evidence is admissible lies with the trial judge. Barring abuse of discretion by the trial judge in matters of admissibility, this court will not interfere with the trial court's decision. We find no abuse of discretion in this instance and, therefore, we refuse to disturb the trial court's ruling.
Defendant's next three allegations of error deal with certain jury charges, either given or omitted, and all three contentions are without merit. The given charge here challenged, when viewed in light of the court's entire oral instruction, was a correct statement of the law. The substance of the refused charges, requested by Defendant, was adequately covered in the court's oral instructions.
Finally, Defendant argues that the verdict was excessive. In our recent case of Hammond v. City of Gadsden, 493 So. 2d 1374 (Ala.1986), we reiterated our reluctance to usurp the prerogative of the trial court and to interfere with its decision to deny a new trial on the ground of excessiveness of the jury's verdict. We take this opportunity, however, to re-emphasize that Hammond requires the trial court to state its reasons for either granting (as a condition of its denial of defendant's motion for a new trial) or denying remittitur. Because the record before us contains no stated rationale for the court's denial of the motion for remittitur, we must remand this cause for the trial judge's statement of his reason for denying the post-judgment motion *513 for a new trial based solely upon the ground of excessiveness of the verdict.
The trial court, within its discretion, may order a further hearing on the remittitur issue or may comply with these instructions without a further hearing. In any event, the trial court shall report its findings and conclusions to this Court within 28 days of the issuance of this opinion.
AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.
MADDOX, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and STEAGALL, J., dissent.
TORBERT, Chief Justice (dissenting).
I would reverse because of the trial court's submitting the issue of damages for mental anguish to the jury. If the majority of this Court wishes to extend damages for mental anguish to the area of fraud, it should do so in a more appropriate case, where an objective standard for awarding such damages could be put forth.
The trespass cases of B.F. Goodrich v. Hughes, 239 Ala. 373, 194 So. 842 (1940), and Dawsey v. Newton, 244 Ala. 661, 15 So.2d 271 (1943), and the marriage case of Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975), do contain language that allows the Court to extend mental anguish damages to the area of fraud. However, this case is not the proper one in which to take such a step. Allowing such damages in a case of fraud because of "insult or contumely" should only be done under an objective standardsuch as upon a determination of whether a reasonable person in like circumstances would be insulted by the conduct in question. See Anderson v. Atlanta Newspapers, Inc., 212 Ga. 776, 95 S.E.2d 847 (1956). The majority states that the rude and insulting language of the defendant's agents was a primary reason for Mr. Boston's pursuing this action. On direct examination Mr. Boston testified to this language:
"Q. What did you say to Mr. Reinhardt?
"A. I told Mr. Reinhardt I had reason to suspect my [engine] head was not cracked as he and Mr. Jackson had previously indicated.
"Q. What did he say?
"A. He said that there was nothing to talk about. I called him on the telephone, by the way, and I told him I had reason to suspect my head wasn't cracked as he and Mr. Jackson indicated. We needed to get together and talk about it.
"Q. What did he respond to that?
"A. Yeah. He said there was nothing to talk about. I had made my decision. That he understood I was upset because I had spent the money for the new head, but there was absolutely nothing to talk about. He went into detail about there is no absolute way to tell if the head is cracked or not cracked.
"Q. Is that the first time that Mr. Reinhardt or anybody else at Reinhardt had told you there was no way to tell whether or not the head was cracked?
"A. Yes, sir, that was.
"Q. Describe Mr. Reinhardt's tone of voice to the jury.
"A. At first, he was kind of harsh. But as we talked, hewe talked about forty minutes, I guess. And as we talked, he got a little, his voice got a little bit more calmer. I guess he assumed I was satisfied with his reasoning. So his voice, as we talked along, got more calmer. The nicer he got.
"Q. Was he firm when he said there was nothing to talk about?
"A. He was definitely firm when he said there was nothing to talk about."
"Q. All right. Did your conversation with Mr. Reinhardt cause you any, or this whole experience about learning that the head wasn't cracked and your conversation with Mr. Reinhardt, did that cause you any emotional upset?
"A. Yes, sir, it did.
"MR. MORROW: Objection. That calls for a legal conclusion.
"THE COURT: Isn't this an element of damage[s] in this case?

*514 "Q. (By Mr. Segall) You can answer."
Then on cross-examination, Mr. Boston testified:
"A. Yes, sir. They had done the work. It was still under warranty, if I recall.
"Q. They were still nice, weren't they?
"A. Yes, sir.
"Q. You didn't have, I'm talking about the mental anguish, about how they were treating you. They weren't treating you bad?
"A. No sir. The mental anguish came from, I was deceived, taken advantage of. I was not told everything I should have been told to make the proper decision. That's what mental anguish came from.
"Q. Well, you said they treated you bad, Mr. Boston?
"A. Yes, sir.
"Q. But you said they treated you good when you came out there on September 9th?
"A. They did not ever at one time treat me bad. The only harsh words I had is initially, when I talked to Mr. Reinhardt. He was kind of harsh saying there was nothing to talk about. But no one ever treated me bad. When I say treated me bad, other than that one time, they've always been polite to me."
Mr. Boston testified that his mental anguish came from being deceived. If mental anguish damages are allowed for every case of deceit, then the whole law of fraud will be radically changed. "Deceit is an economic, not a dignitary tort.... separate recovery for mental anguish is usually denied in deceit cases." D. Dobbs, Handbook on the Law of Remedies § 9.2 at 602 (1973). As for allowing mental anguish damages for fraud accompanied by insult, perhaps Mr. Boston was genuinely, subjectively insulted, but the actions by Mr. Reinhardt certainly do not meet an objective standard for insult. This Court should not allow a plaintiff to recover a mental anguish award every time he feels as if he has been let down by someone or someone is a bit abrupt with him in a telephone conversation.
The trial judge charged the jury, "If you are reasonably satisfied from the evidence that the plaintiff has undergone mental anguish as a proximate result of the injury in question, you should award such sum as would reasonably and fairly compensate him for such mental anguish suffered by him." Such a charge states a subjective standard for determining mental anguish due to fraud with insult. If the Court is going to recognize mental anguish damages for fraud, then it should require an objective standard for proof of such damages, and the present case is not the proper one for establishing such a precedent.
For these reasons I must respectfully dissent.

ON RETURN TO REMAND
PER CURIAM.
The trial court's order on remand denying the defendant's motion for a new trial, or, alternatively, for an order denying a new trial on the condition that plaintiff accept a remittitur, is affirmed.
AFFIRMED.
MADDOX, JONES, BEATTY, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and STEAGALL, J., dissent.
TORBERT, Chief Justice (dissenting).
Because I dissented on the original deliverance of the opinion in this case, I dissent from the order affirming the trial court's supplemental order denying defendant's motion for a new trial on the ground of excessiveness of the verdict.
STEAGALL, J., concurs.