# IN THE COURT OF APPEALS 5/6/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-CA-00372 COA

WILLIAM L. HOPKINS

APPELLANT

 v.

 ANNWOOD J. HOPKINS

APPELLEE


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. WILLIAM ROBERT TAYLOR, JR.

COURT FROM WHICH APPEALED: CHANCERY COURT OF PEARL RIVER COUNTY

ATTORNEY FOR APPELLANT:

WALTER W. TEEL

FOR APPELLEE:

REBECCA C. TAYLOR

NATURE OF THE CASE: DOMESTIC RELATIONS

TRIAL COURT DISPOSITION: MOTION TO RECONSIDER FINAL JUDGMENT OF
DIVORCE OVERRULED


CERTIORARI FILED: 7/29/97

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

BRIDGES, C.J., FOR THE COURT:

William and Annwood Hopkins were granted a divorce on the ground of irreconcilable differences on December 8, 1994. William now appeals the denial of his Motion to Reconsider, arguing that (1) the court failed to grant child support; (2) the court failed to properly divide the assets of the parties; (3) the court erred in awarding an excessive amount for alimony; and (4) the court erred in hearing testimony regarding a letter written by William over ten years prior to the hearing. Because we find that the chancellor committed reversible error with regard to issues one and two, we hereby reverse and remand this case for reconsideration.

FACTS

William and Annwood Hopkins were married in Picayune, Mississippi on June 15, 1976. They adopted a daughter, Tanya, who was born on May 29, 1979. The couple separated in Pearl River County on March 29, 1993. William filed suit for divorce on May 6, 1993, on the ground of habitual cruel and inhuman treatment or irreconcilable differences. He requested custody of Tanya, as well as support, because of the child's dismal relationship with her mother. Annwood also filed suit for divorce seeking custody of Tanya, equitable division of the property, and alimony.

The court entered a temporary order on September 20, 1993, giving William temporary custody of Tanya, allowing that the family home in Picayune be sold, and requiring that Annwood turn over all of William and Tanya's personal belongings by a certain date. The couple subsequently entered into a written stipulation and consent for divorce on the ground of irreconcilable differences. The final judgment of divorce was entered on December 8, 1994. William got custody of Tanya, but no child support was granted. This was apparently due to the fact that Annwood's monthly income was $479.00 and that her only significant asset was an IRA account containing $2,636.14.

The court divided the personal property between William and Annwood. Annwood was awarded a van. She was also awarded one-half of William's retirement plans from General Electric and Sverdrup, and one-half of William's 401K plan. William was further required to maintain medical insurance for Annwood and to pay for one-half of her medical expenses not covered by insurance. William was finally required to pay $1,000.00 per month in permanent alimony to Annwood.

At the time of trial, William was retired and had a monthly income of about $3,300.00. William was sixty years old at the time of trial and had significant assets. He had retirement accounts from his employment at General Electric (worth around $69,000) and Sverdrup (worth around $8,600). He had inherited savings of $40,000 and land in Cullman, Alabama worth around $40,000. He and Tanya have since moved to the land in Alabama where they reside.

STANDARD OF REVIEW

"Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." *Johnson v. Johnson,* 650 So. 2d 1281, 1285 (Miss. 1994) (citing *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994)).

ARGUMENT AND DISCUSSION OF LAW

## I. WHETHER THE COURT ERRED BY NOT AWARDING CHILD SUPPORT TO WILLIAM.

William argues that the chancellor erred in not awarding child support. William further argues that the chancellor should have made specific findings of fact as to why he deviated from the child support guidelines. Section 43-19-101(1) of the Mississippi Code of 1972 creates a rebuttable presumption that child support should be awarded to the custodial parent. If the chancellor deviates from, or does not follow, the guidelines set forth by Mississippi Code Section 43-19-101(1), he or she must state for the record that to do so would be unjust or inappropriate. Miss. Code Ann. § 43-19-101(2) (1972).

While the chancellor in the case *sub judice* did comment briefly about Annwood's poor financial state, he did not sufficiently discuss how requiring her to lend her daughter even the most minute financial support would be unjust or inappropriate. "The duty of parents to support financially, as well as otherwise, their minor children is ingrained in our law." *Adams v. Adams*, 467 So. 2d 211, 214 (Miss. 1985). Furthermore, the duty of the noncustodial parent to render support has long been recognized in this state. *Lide v. Lide*, 201 Miss. 849, 854, 30 So. 2d 51, 52 (1947). While this Court is quite cognizant of the deference lent to chancellors in deciding what amount should be awarded as child support, we shall require more than a mere cursory reference to the noncustodial parent's financial condition when absolutely no child support is awarded. This is especially true when child support is requested and there is income, meager though it may be, being received by the noncustodial parent. In the case *sub judice*, William requested child support, and Annwood does have a job that brings her income each month. For these reasons, we reverse and remand the issue of child support for reconsideration. On remand, either the child support guidelines set forth in Section 43-19-101(1) of the Mississippi Code of 1972 should be adhered to, or a sufficient written finding pursuant to Section 43-19-101(2) of the Mississippi Code of 1972 should be given.

## II. WHETHER THE COURT FAILED TO PROPERLY DIVIDE THE ASSETS OF THE PARTIES.

William next argues that the court improperly divided the assets of the parties. The crux of his argument surrounds the division of his retirement accounts and certain items of personal property. Since we find no error in the chancellor's consideration or division of the personal property, our discussion will involve the division of the retirement accounts. The record reflects that William worked from 1956 until 1985. During this time he accrued retirement benefits. He and Annwood were married for seventeen years from 1976 to 1993. The chancellor awarded one-half of *all* of William's retirement benefits to Annwood.

This Court believes that during the seventeen year marriage, Annwood's contributions to the marriage, domestic and otherwise, require that William's retirement funds be labeled as assets that have been jointly acquired. *Ferguson v. Ferguson*, 639 So. 2d 921, 934 (Miss. 1994). As such, "she (Annwood) is equitably entitled to some portion of the couple's jointly acquired retirement funds." *Ferguson*, 639 So. 2d at 934. Having justified Annwood's right to a portion of William's retirement, we must now decide what portion she should share. Our supreme court has said:

> We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during

the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor.

*Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994). It is the opinion of this Court that, according to *Hemsley*, all retirement benefits that accrue during the span of the marriage are marital assets and are subject to an equitable distribution by the chancellor. Conversely, retirement benefits that accrue outside of the span of a marriage are not marital assets, and therefore, are not subject to equitable distribution by the chancellor. We find that the chancellor erred in awarding a portion of *all* of William's retirement to Annwood. We reverse and remand this issue for reconsideration and recalculation of what portion of William's retirement benefits should be awarded to Annwood. On remand, the chancellor should only award Annwood a portion of William's retirement benefits that accrued during their marriage.

### III. WHETHER THE COURT ERRED IN ITS AWARD OF ALIMONY.

The chancellor awarded Annwood alimony in the amount of $1,000.00 per month. When we review awards of periodic alimony, "we will not disturb the chancellor's decision on alimony on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." *Creekmore v. Creekmore*, 516 So. 2d 513, 517 (Miss. 1995) (citing *McNally v. McNally*, 516 So. 2d 499, 501 (Miss. 1987)). Furthermore, "[w]hether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor." *Parsons v. Parsons*, 678 So. 2d 701, 703 (Miss. 1996). We find that the chancellor's decision was supported by the evidence and was not in error.

The chancellor found that, during the marriage, William provided for his family a very high standard of living. Since the divorce, William and Tanya had moved to William's inherited land in Alabama, thereby greatly reducing his cost of living. Annwood was forced to live on less than $500.00 per month, while William received approximately $3,300.00 per month in income. We find that the evidence supports the chancellor's award of alimony and that the chancellor was not in error. Accordingly, we affirm the chancellor's award of alimony.

### IV. WHETHER THE CHANCELLOR WAS BIASED BY THE CONTENTS OF A LETTER WRITTEN BY WILLIAM SOME TEN YEARS PRIOR TO THE TRIAL.

William argues that the chancellor was prejudiced after reading a letter that had been typed by William some ten years earlier. Apparently, the letter contained a less than complimentary discussion of two judges unrelated in any way to this case. The letter was marked for identification, but was never admitted into evidence pursuant to Mississippi Rule of Evidence 404. Furthermore, William has shown this Court no bias, prejudice, or error in the chancellor's actions. Our review of the record reveals no error related to the chancellor's reading of the letter. Accordingly, we find no merit in this issue.

**THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS HEREBY REVERSED AND REMANDED FOR FINDINGS NOT INCONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE HEREBY TAXED EQUALLY TO THE PARTIES.**

**McMILLIN, P.J., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ.,**

**CONCUR. THOMAS, P.J., AND HINKEBEIN, J., NOT PARTICIPATING.**